WILLIAM J. FORD *v.* HOTEL AND RESTAURANT EMPLOYEES AND BARTENDERS INTERNATIONAL UNION A.F.L.–C.I.O. LOCAL 159

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued January 3—decided April 26, 1967

*Charles G. Albom,* with whom was *Joseph M. Delaney,* for the appellant (defendant).

*Joseph P. Patrucco,* with whom was *Leonard J. Powers,* for the appellee (plaintiff).

RYAN, J. This is a negligence action in which the plaintiff seeks to recover for personal injuries suffered as a result of a fall into an unguarded stairwell located on the exterior of the state armory

in Meriden. The finding, with such corrections as the defendant has shown itself entitled to, recites the following facts: On November 2, 1959, the state of Connecticut leased to the defendant so much of the armory as might be necessary for the purpose of conducting a dance on November 22, 1959, and reserved from the lease the portion of the premises which was necessary for military purposes. The lease provided that the authority of the lessee was absolute over the portion leased and that any injury or damage which might result to any person, or to the property of any person, while he was on the premises or approaches thereto by the invitation or permission of the defendant would be chargeable to the defendant. The reserved portion of the building consisted only of the first and third floors of the headhouse, which included the wings, except for the lavatories. The reserved portion of the building was locked and was not accessible to anyone.

The dance was held in the drill shed, a rectangular building extending southerly from the headhouse, which fronted on East Main Street. Entrance to the dance was normally gained by virtue of the main entranceway, which led through the second level of the headhouse to the drill shed. Since the drill shed was not as wide as the headhouse, an "L" was formed where the east wall of the drill shed met the south wall of the headhouse. The stairwell in question was in this corner. The stairs were about sixteen feet in length and extended from the top at the east to the bottom at the west. The south side of the stairwell was unprotected, but there was a curbing parallel to it on the south side for the purpose of keeping water from running into the stairwell. Tickets to public functions usually were collected at the front entrance to the drill shed. In

addition to this front entrance, which also served as an exit for the public, there were four other doors in the drill shed: two on the west wall, one on the south wall, and one on the east wall. The doors on the west and south walls were fire exits with marked exit signs over them in the drill shed. Neither the front door nor the east door had exit signs, and the east door had no crash hardware. In the early 1950's, there had been an exit sign over the east door.

The state of Connecticut had an easement for passing and repassing over a strip of land which ran about 200 feet south from East Main Street. The west side of this strip was contiguous with the east wall of the headhouse. The land between the west boundary of the driveway easement and the east wall of the drill shed was a parking area. It was the only parking area on the premises and was owned by the state. The stairwell in question was located in the parking area. The parking lot ran along the drill shed for 150 feet. The width of the parking lot east and west was about twenty feet at its most northerly point, and it tapered to the south. On the east wall of the drill shed there was an overhead door whose base was about twelve inches above the main floor of the drill shed in the interior, and from two to two and a half feet above the parking lot surface. The door was about twelve feet wide and fifteen feet high. Over the outside of this door, there was a light consisting of a 150-watt bulb with a white porcelain reflector. There was no other artificial light for the parking lot. The light was affixed eighteen feet above the ground at a point fifty-five feet south of the open stairwell. The interior lighting did not illuminate the area of the stairwell.

The plaintiff, accompanied by two friends, attended the dance. Before entering the armory, he parked his car on East Main Street in a gasoline station located to the east of the armory. The plaintiff, who was a paying guest and invitee, arrived at the dance about 9:30 p.m. and stayed until the dance terminated at about 1:30 a.m. on November 23. He and his friends brought with them a case of beer, consisting of thirty-six seven-ounce bottles. They sat at a table seating nine or ten people which was reserved for them at the southerly end of the drill shed fifty to sixty feet from the east door. The plaintiff consumed the contents of eight or nine of these bottles during the dance in addition to some at other tables. At the conclusion of the dance, the plaintiff was separated from his two companions and left the drill shed by way of the east door. His companions went out the front door. The east door was open at this time. It had been locked before the dance started. About 7:30 p.m., John Havey, who had been appointed by the union to make all the arrangements for the dance and to supervise its conduct, asked Harold R. Schultz, a man employed by the state as the caretaker, to unlock the door so that the caterer could bring in the food for the party. Schultz did so and retained the key. Between 8 p.m. and 9 p.m., the caterer brought in the food, electricians brought in an electric chandelier, suppliers of ice brought in their wares, and the members of the band brought in their instruments. The door was then closed but not locked during the dance. At the end of the dance the door was opened. About 500 guests were in attendance, and a general exodus took place when the music ceased. Besides the plaintiff, other people were using the east door as an exit at the same

time, including patrons of both sexes and members of the band. Immediately outside the east door, the area was filled with cars owned by people who attended the dance. The whole area was occupied by the parked cars which were facing the east wall, as well as north and south in the driveway, and, although people were getting into them, none of the cars had started to move out. The plaintiff walked northerly between the parked cars and the east wall, because car doors were being opened by people entering the cars which were parked in irregular fashion in the parking area and in the driveway. As the plaintiff continued on his course, the area became increasingly dark, and he stepped into the open stairwell and fell to the bottom of the staircase. The light above the east door did not light up the area of the stairwell. A car was parked immediately next to, and to the south of, the stairwell, parallel to it. The position of the car partially blocked the vision of the plaintiff as he was approaching the stairwell. The plaintiff did not stop at any time between the east door and the stairwell, and he walked in a normal manner. The path he took in leaving through the east door was a reasonable one to follow to reach East Main Street through the parking area and driveway. There were no barriers or warning signs in the vicinity of the stairwell. There were no signs or barriers in the drill shed in the area of the east door warning against the use of the door at the time the plaintiff left the drill shed, and, although Havey and members of his committee in charge of the dance were on the floor at the time, there was no one in the area adjacent to the doorway to prevent patrons from using it. No other function or activity was held at the armory on that night.

While the plaintiff was a high school student, he attended about fifty basketball games in the years 1946 through 1949 and used the east door at least twenty or thirty times. During that period, the door had been used as an exit. Prior to November 22, 1959, the plaintiff had not been on the premises for about eight years, and he did not remember that there was an open stairwell on the outside premises. The lease agreement between the defendant and the state of Connecticut was entered into on November 2, 1959. The defendant had previously held a dance at the armory in 1958. At no time either in 1958, when the first dance was held, or during the three weeks between the signing of the lease agreement and the dance in 1959 did the defendant or its representatives look over or inspect the area on the east side of the building, although it was aware, through its agents, of the east door, that the door was above the level of the ground, and that the door was to be used for the dance. The defendant knew there were a driveway and a parking area on the east side of the armory building immediately adjacent to the east door. The defendant was in control of ingress and egress of the east door from 7:30 p.m. on November 22, 1959, until everyone had left the drill shed at the conclusion of the dance. The defendant had knowledge that the east door was used during the course of the night by the caterer, members of the band, suppliers of ice, and the electricians and that it was unlocked all during the dance. The defendant knew at the termination of the dance that the east door was open and that it remained open for three-quarters of an hour thereafter. Despite this knowledge, the defendant made no effort to control or prevent the patrons from using the door as an exit although

it knew or should have known that patrons were using it. At no time did the defendant, acting through its agent, make any proper inspection of the area adjoining the east door of the drill shed and particularly of the condition of the open stairwell.

In his complaint, the plaintiff alleged that the defendant was negligent in that it failed to warn him of the open stairwell, failed to make a reasonable inspection of the premises, failed to guard the stairwell, failed to light either the stairwell or the surrounding area, and failed to prevent persons from using the door which led to the area in which the stairwell was located. The defendant in its answer denied the specifications of negligence and filed a special defense alleging contributory negligence on the part of the plaintiff in that he failed to keep a proper lookout, in that he failed to make reasonable and proper use of his senses and of his faculties, in that he did not use the exits marked as such in leaving the building, in that he did not have full possession of his mental and physical faculties owing to his voluntary consumption of alcoholic beverages, and in that he failed to use reasonable care for his own safety commensurate with the existing circumstances and conditions.

On the basis of the facts found, the court reached the following conclusions: (1) The plaintiff was an invitee of the defendant, and the defendant had a duty to provide reasonably safe means of ingress and egress to him as to those places which were included within the scope of the invitation. (2) The invitation of the defendant to the plaintiff could reasonably extend to, and include, the use of the east door as a reasonable means of egress. (3) There was an implied invitation by the defendant to

the plaintiff to use the east door as a means of egress. (4) It was the duty of the defendant to make the egress through the east door and the approach to the street reasonably safe for invitees. (5) The open stairwell constituted a dangerous hazard likely to do harm to the plaintiff, who was lawfully using the premises. (6) The defendant failed to make proper and reasonable inspection of the area to ensure that the plaintiff would not be exposed to the hazard of the open stairwell. (7) The defendant failed to guard the stairwell with guard rails or other barriers. (8) The defendant failed to light the stairwell or the area surrounding it and therefore left the open stairwell concealed from users of the area. (9) The defendant failed to prevent the plaintiff from using the easterly exit as a means of egress although, in the exercise of reasonable care, it should have known of the hazardous condition existing in the area surrounding the stairwell. (10) The defendant failed to warn the plaintiff of the hazardous condition existing with respect to the stairwell and the use of the east door as a means of egress. (11) The negligence of the defendant was a proximate cause of the plaintiff's injuries. (12) The defendant failed to sustain its burden of proof in the special defense of contributory negligence.

The defendant claims that the conclusions of the trial court as to negligence and proximate cause are not legally supportable on the subordinate facts found and that the plaintiff was chargeable with contributory negligence as a matter of law.

There can be no doubt that the plaintiff, a paying guest, was an invitee, and the trial court was correct in so holding. *Lowthert* v. *Loyal Order of Moose of Stamford, Lodge No. 940, Inc.*, 147 Conn.

529, 533, 163 A.2d 106; *Facey* v. *Merkle,* 146 Conn. 129, 133, 148 A.2d 261; *Vignone* v. *Pierce & Norton Co.,* 130 Conn. 309, 313, 33 A.2d 427. The measure of duty owed the plaintiff by the defendant with respect to the condition of the premises was the exercise of reasonable care to have and keep them reasonably safe for the reasonably to be anticipated uses which he would make of them. *Facey* v. *Merkle,* supra; *Lubenow* v. *Cook,* 137 Conn. 611, 614, 79 A.2d 826. The defendant urges that the conclusions of the trial court that the invitation of the defendant to the plaintiff could reasonably include the use of the east door as an exit and that there was, under the circumstances, an implied invitation to the plaintiff to use that door cannot be sustained. The trial court found as facts that the defendant was aware, through its agents, of the east door, that the door was above the level of the ground, that it was to be used for the purpose of the dance, and that there were a driveway and a parking area immediately adjacent to the east door. It also found that the defendant had knowledge that the door was used during the course of the night by the caterer, members of the band, suppliers of ice and the electricians, that it was unlocked all during the dance, that at the termination of the dance the door was open, that it remained open for three-quarters of an hour thereafter, and that the defendant knew, or should have known, that patrons were using it.

"An invitation usually includes the use of such parts of the premises as the visitor reasonably believes are held open to him as a means of access to or egress from the place where his purpose is to be carried out." Restatement (Second) Torts § 332, comment l. "Whether an invitee exceeded the limits

of the invitation depends upon whether his use of the premises went beyond that which the owner might reasonably have contemplated. *Guilford* v. *Yale University,* 128 Conn. 449, 454, 23 A.2d 917; *Smith* v. *L. & S. Corporation,* 133 Conn. 105, 107, 48 A.2d 239." *Morris* v. *Granato,* 133 Conn. 295, 299, 50 A.2d 416. The trial court was warranted in reaching these conclusions.

The defendant makes the further claim that since the trial court did not find that the yard space, or the dangerous stairwell, or the electrical outlets outside the drill shed were under the control of the defendant, there can be no liability on the part of the defendant. The trial court found that the defendant never made an inspection of the area on the east side of the building adjoining the east door of the drill shed which would have revealed the open stairwell, an obviously dangerous condition. The defendant knew, or should have known, that, at the conclusion of the dance, the 500 patrons would be using the doors. The defendant was in control of ingress and egress of the east door from 7:30 p.m. on November 22 until after everyone had left the drill shed at the conclusion of the dance. It knew, or should have known, that the plaintiff and the other patrons were using the east door as a means of egress, yet no effort was made either by signs or barriers, or by posting a member of the committee at the door, or by the simple expedient of closing and locking it, to prevent such a use.

"If the owner of premises to which the public is impliedly invited has negligently misled a business visitor into the reasonable belief that a passageway or door is an appropriate means of reaching a portion of the premises to which he is invited, he is entitled to the protection of a business visitor in

using such passageway or door. . . . Thus if a building to which the public is invited has a door leading to a cellar or other dangerous place which is left unfastened and which from its location and appearance may reasonably be mistaken for a door which the public is entitled to use, the owner may be liable to one who mistakenly used it and is injured." *Knapp* v. *Connecticut Theatrical Corporation,* 122 Conn. 413, 416, 190 A. 291. "[A]n invitee enters upon an implied representation or assurance that the land has been prepared and made ready and safe for his reception. He is therefore entitled to expect that the possessor will exercise reasonable care to make the land [reasonably] safe for his entry, or for his use for the purposes of the invitation. He is entitled to expect such care not only in the original construction of the premises, and any activities of the possessor or his employees which may affect their condition, but also in inspection to discover their actual condition and any latent defects, followed by such repair, safeguards, or warning as may be reasonably necessary for his protection under the circumstances." Restatement (Second) Torts § 343, comment b. Whether or not the defendant was in control of the parking lot and the unguarded stairwell is not a determining factor in this case. The defendant was in actual control of the drill shed and of the east door leading to the parking area, and, in the exercise of reasonable care, it should have known of the existence of the dangerous condition and should have taken appropriate steps to prevent its invitees from using the door. The court was justified in finding that the failure to do so was negligence which was a proximate cause of the plaintiff's injuries.

The final claim of the defendant is that the plain-

tiff was chargeable with contributory negligence as a matter of law. The last time the plaintiff had visited the premises was about eight years prior to his injury, and he did not remember that there was an unguarded stairwell on the premises. The path which he took was a reasonable one to follow to reach East Main Street. The stairwell was in darkness, and the plaintiff's view was partially blocked by a car parked next to the stairwell. Contributory negligence is a question of fact to be determined by the trial court from all the surrounding circumstances. *Deacy* v. *McDonnell,* 131 Conn. 101, 106, 38 A.2d 181. The burden of proof is on the defendant. Where the trier concludes that one is free from contributory negligence, that conclusion must stand unless the conduct involved is manifestly contrary to that of the reasonably prudent man. *Cappiello* v. *Haselman,* 154 Conn. 490, 497, 227 A.2d 79; *Faille* v. *Hollett,* 150 Conn. 397, 400, 190 A.2d 53. On the basis of the subordinate facts found, we cannot say that the trial court was required to conclude that the plaintiff was chargeable with contributory negligence.

There is no error.

In this opinion the other judges concurred.