MICHAEL FRANKOVITCH *v.* ROBERT BURTON, SR., ET AL.

BOGDANSKI, C. J., PETERS, HEALEY, PARSKEY and ARMENTANO, Js.

Argued May 7—decision released July 21, 1981

*David E. Schancupp,* for the appellant (defendant Robert Burton, Jr.).

*Frank N. Eppinger,* with whom, on the brief, were *Peter J. Bartinik, Steven H. Schafer, Matthew Shafner* and *Stephen C. Embry,* for the appellee (plaintiff).

ARTHUR H. HEALEY, J. In this negligence action, the jury returned a verdict in favor of the plaintiff, Michael Frankovitch, and against the defendant,

Robert Burton, Jr.[1] Thereafter, the trial court, in a written memorandum of decision, denied the defendant's motion to set aside the verdict and for judgment notwithstanding the verdict.[2] This appeal followed.

In claiming that the court erred in failing to grant his motions, the defendant maintains that the jury could not, as a matter of law, have found on the evidence that he was guilty of negligence which was a proximate cause of the plaintiff's injuries. In making this claim, he not only argues that, under the circumstances, he owed no duty of care to the plaintiff with respect to his fall, but he also urges that, on the evidence, "the jury could not reasonably have found otherwise than that the plaintiff was guilty of negligence which was the sole proximate cause of his fall, and which superseded whatever negligence may have been found to have existed on the part of the defendant."[3] It is also claimed that the court erred in its charge to the jury.

Our review of a trial court's refusal to set aside a jury verdict is limited. "If, on the evidence, the jury could reasonably have decided as they did, we will not find error in the trial court's acceptance of the verdict. *Rood* v. *Russo,* 161 Conn. 1, 3, 283 A.2d 220

---

[1] This action was originally instituted against several defendants, Robert Burton, Sr., Robert Burton, Jr., and the state of Connecticut (Samuel Kanell, commissioner of transportation). It was later withdrawn as to the defendant Robert Burton, Sr., and the court directed a verdict in favor of the defendant state of Connecticut. No appeal has been taken from the judgment in favor of the state.

[2] The defendant Robert Burton, Jr., made a motion for a directed verdict upon which the trial court reserved decision; see Practice Book § 321; and submitted the case to the jury. A motion for a directed verdict is a prerequisite to a motion for judgment notwithstanding the verdict. Practice Book § 321; see, e.g., *Cruz* v. *Drezek,* 175 Conn. 230, 232, 397 A.2d 1335 (1978).

[3] The court charged the jury on the doctrine of comparative negligence.

(1971); *Giambartolomei* v. *Rocky DeCarlo & Sons,* 143 Conn. 468, 474, 123 A.2d 760 (1956). A jury verdict should not be disturbed 'unless it is against the evidence or its manifest injustice is so plain as to justify the belief that the jury or some of its members were influenced by ignorance, prejudice, corruption or partiality.' *Martino* v. *Palladino,* 143 Conn. 547, 548, 123 A.2d 872 (1956)." *Kalleher* v. *Orr,* 183 Conn. 125, 126, 438 A.2d 843 (1981). In *Kalleher,* we also observed: "Upon review, by the trial court on a motion to upset the jury's verdict and in this court, 'the evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable.' *Horvath* v. *Tontini,* 126 Conn. 462, 464, 11 A.2d 846 (1940)." *Kalleher* v. *Orr,* supra, 126–27; see also *Healy* v. *White,* 173 Conn. 438, 442, 378 A.2d 540 (1977); *Dulski* v. *Appel,* 172 Conn. 187, 190, 374 A.2d 177 (1976); *LeBlanc* v. *Bray,* 168 Conn. 92, 93, 357 A.2d 926 (1975); *Petrizzo* v. *Commercial Contractors Corporation,* 152 Conn. 491, 499, 208 A.2d 748 (1965); Maltbie, Conn. App. Proc. § 189.

While we are aware that where error is claimed in the trial court's refusal to set aside a verdict great weight is to be given to the action of the trial court, and every reasonable presumption should be given in favor of its correctness; see, e.g., *Katsetos* v. *Nolan,* 170 Conn. 637, 656, 368 A.2d 172 (1976); *Gosselin* v. *Perry,* 166 Conn. 152, 168, 348 A.2d 623 (1974); the evidence before the jury must be sufficient to impose liability on the defendant in order to permit a plaintiff's verdict to stand. *Tabshey* v. *Fiume,* 151 Conn. 302, 304, 197 A.2d 338 (1964); see 75 Am. Jur. 2d, Trial § 320. A review of what the jury could reasonably have found is appropriate at this point.

The jury could reasonably have found the following facts: The Brookside Inn (Brookside), a country tavern or inn which dispenses alcoholic beverages, is located on route 2A in Preston. In May, 1975, the defendant Robert Burton, Jr., operated the Brookside, leasing the premises from his father, Robert Burton, Sr. The Brookside, which faces in a northeasterly direction, is an oblong-shaped building with its front wall close to the pavement of the highway.[4] It is a popular spot among young people.

On May 26, 1975, after 11 p.m., the plaintiff Frankovitch, then eighteen years of age, arrived at the Brookside with two male friends. The car in which they arrived was parked in a lot across the highway from the tavern, which lot was used for parking for this establishment. The plaintiff had never been to the Brookside before. He and his companions entered the inn through a door in the front of the building[5] which opens into a hallway. A door on the right side of the hallway opens into a barroom; there is a men's room in the northwesterly corner of this barroom. Farther down the hallway and on the left there is an entrance which opens into a back room or "lounge" with tables and chairs; there is a men's room and a ladies' room in this room, located near the entrance into that room.

After entering the barroom and showing identification to the bartender, the plaintiff and his two companions proceeded to the back room, with beer

---

[4] An engineer's map in evidence indicates that the door through which the plaintiff entered and exited the Brookside is about eleven feet from the edge of the pavement of route 2A.

[5] According to a sketch in evidence as a defendant's exhibit, there were two doors in the front of the Brookside facing route 2A. The plaintiff and his two companions entered through that door which is the more westerly of the two doors.

that was purchased,[6] and sat down. There were no waiters or waitresses that were taking care of the people in the back room. After about thirty minutes, while the plaintiff was still in the back room, the plaintiff "found himself in somewhat urgent straits and felt that he was required to utilize bathroom facilities immediately."[7] He saw that the men's room in the back room was blocked by a juke box which was then playing; the juke box was "right against the door of the men's room" and "blocking the door."[8] Other than a sign indicating "Men's Room," there were no other signs on the door. The plaintiff, after viewing this situation, told one companion that he was going outside because "he had to go to the bathroom."

The plaintiff went down the same hallway and out the same door through which he had entered the Brookside. Upon exiting from the building, he stepped immediately to his right, in a generally easterly direction. He stated at trial that "[i]t looked like there was a small walk there." He continued walking easterly immediately adjacent to the front of the building and behind some shrubs or plantings toward the southeasterly corner of the building. He intended to relieve himself around the corner. The path he followed was wide enough so that he did not brush against the shrubs or front

[6] Although the plaintiff and his companions ordered drinks, the plaintiff, who presented a birth certificate, was refused service for the reason that he did not possess suitable and sufficient information as to his age. The plaintiff was in fact eighteen years of age at the time.

[7] This is the trial judge's statement in his memorandum of decision on the defendant's motion to set aside the verdict and for judgment notwithstanding the verdict.

[8] There was evidence before the jury that the plaintiff and his companions were seated about eight to ten feet from the juke box.

wall as he proceeded to the corner.[9]  As he got near the end of the building, he did not remember if he saw a guardpost or a rail, and stated: "[I]t was dark there.  There wasn't much lighting."  He, however, knew the end of the building was there.  He reached the corner of the building, and "one step around the corner" he fell, going through a gap between a state highway guardrail and the building.  The gap through which he fell was at a stone retaining wall and was about 1.7 feet wide.  He plunged thirteen feet down to the bed of a rocky brook below, sustaining various injuries, the most serious of which was a fracture of the neck of his left femur.  The defendant had operated the Brookside for eight years, and was familiar with the brook next to the building and with the wall.

We take up first the claim of the defendant that, as a matter of law, the jury could not have found that the defendant was guilty of negligence which was a proximate cause of the plaintiff's injuries.  Under this claim, he argues that, (1) under the circumstances, the defendant owed no duty to the plaintiff with respect to his fall and that, (2) on the evidence, the jury could only reasonably have found that the plaintiff's negligence was the sole proximate cause of his fall, which superseded whatever negligence may have been found on the part of the defendant.

It is clear from the evidence that the plaintiff and his two friends entered the Brookside as business invitees.  The defendant does not dispute the plaintiff's invitee status with reference to the interior

---

[9] The plaintiff testified that he did not notice an electric meter that protruded out some nine inches from the front wall of the building which was at about eye level and almost at the southeasterly corner of the building.

portion of the premises or the means of ingress and egress thereto leading to the parking lot which is located across route 2A. "The measure of duty owed the plaintiff by the defendant with respect to the condition of the premises was the exercise of reasonable care to have and keep them reasonably safe for the reasonably to be anticipated uses which he would make of them." *Ford* v. *Hotel & Restaurant Employees & Bartenders Union,* 155 Conn. 24, 33, 229 A.2d 346 (1967); see *Morris* v. *Granato,* 133 Conn. 295, 299, 50 A.2d 416 (1946); *Guilford* v. *Yale University,* 128 Conn. 449, 454, 23 A.2d 917 (1942); *Knapp* v. *Connecticut Theatrical Corporation,* 122 Conn. 413, 416, 190 A. 291 (1937). The defendant argues, however, that this duty of care does not extend to those portions of the premises which the defendant had not expressly or impliedly invited his business visitors to use, or which he would not reasonably expect his business visitors to use in connection with the conduct of the business on the premises in question.[10]

Where there is no duty, there can be no actionable negligence. "Unless some relationship exists between the person injured and the defendant, by which the latter owes a duty to the former, there can be no liability for negligence. *McDowell* v. *Federal Tea Co.,* 128 Conn. 437, 440, 23 A.2d 512 [1941] and cases cited; Prosser, Torts (4th Ed. 1971) §§ 30, 33, 53; 57 Am. Jur. 2d, Negligence, § 36." *Neal* v. *Shiels, Inc.,* 166 Conn. 3, 12, 347 A.2d 102 (1974). " 'The ultimate test of the existence of a duty to use care is found in the foreseeability that harm may result

[10] The plaintiff does not claim an express invitation by the defendant to the area of the premises where he fell and sustained injury, but maintains that the jury could reasonably have found an implied invitation extended to him to where he fell. See Restatement, Torts (Second) § 332 and particularly comment (1).

if it is not exercised. *Botticelli* v. *Winters,* 125 Conn. 537, 542, 7 Atl. (2d) 443 [1939]. By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury which resulted was foreseeable, but the test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?' *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 237, 21 A.2d 402 [1941]." *Connecticut Savings Bank* v. *First National Bank & Trust Co.,* 138 Conn. 298, 303–304, 84 A.2d 267 (1951) ; see *Neal* v. *Shiels, Inc.,* supra, 13.

Whether the defendant should have anticipated danger from the particular use made of the premises by the plaintiff presents a close question, but it does present a question of fact. While an invitee who exceeds the limits of his invitation loses his status as an invitee; see, e.g., *Guilford* v. *Yale University,* supra, 454; *Knapp* v. *Connecticut Theatrical Corporation,* supra, 416; whether this plaintiff had done so here depends upon whether his use of the premises was such as the defendant might reasonably have contemplated. *Guilford* v. *Yale University,* supra, and cases therein cited.

It is true that there were two men's rooms inside the Brookside. The plaintiff did not utilize the men's room which he saw because it was fully blocked. Also, there was no indication on that men's room, by way of a sign or otherwise, that there was another men's room in the barroom. Although the plaintiff did not inquire of anyone if there was in fact another men's room inside the premises, the evidence discloses that there were no waiters or

waitresses taking care of people in the back room at the time when the plaintiff had a special urgency to relieve himself. The plaintiff had never been in the building before, and it is certainly reasonable for the defendant to believe that persons may enter the premises for the first time and, considering the nature of the defendant's business, that such a person, or for that matter any patron, may have a need, perhaps more immediate than others, to use the bathroom facilities.

The trier of fact is entitled to draw all reasonable and logical inferences based on facts proven. *Console* v. *Nickou,* 156 Conn. 268, 275, 240 A.2d 895 (1968); *Hennessey* v. *Hennessey,* 145 Conn. 211, 214-15, 140 A.2d 473 (1958). Jurors are not "expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Citations omitted.) *Chicago, M. & St. P. Ry. Co.* v. *Moore,* 166 F. 663, 666 (8th Cir. 1909); see *New Haven* v. *First National Bank & Trust Co.,* 134 Conn. 322, 325, 57 A.2d 494 (1948); *Jutras* v. *Satters, Inc.,* 96 N.H. 300, 302, 75 A.2d 712 (1950); *De Keuster* v. *Green Bay & W. R. Co.,* 264 Wis. 476, 479, 59 N.W.2d 452 (1953). Although the jury did have before it evidence that the plaintiff did not ask the defendant or anyone else in the Brookside, including his companions, if there were another men's room on the premises, the jury could reasonably have found under the circumstances, especially in view of the location of the defendant's business,[11] that the defendant should reasonably

[11] The plaintiff put several photographs in evidence as exhibits. The trial court, in its memorandum of decision on the motions to set

have contemplated that an invitee might leave the interior of the premises as this plaintiff did and for the purpose for which he did. With this, it is not unreasonable for the jury to have found that the defendant might reasonably have contemplated that such a person, once outside the building, would have proceeded along the front of the building, on what looked like a "walk," to the corner at which the plaintiff fell, and that such a person would be looking for a spot that provided privacy.

From the evidence, the jury also could reasonably have found that the plaintiff was not guilty of negligence which, as the defendant argued, "was the sole proximate cause of his fall, and which superseded whatever negligence may have been found to have existed on the part of the defendant."[12] The jury were not required in this comparative negligence case to come to that result. See *Kalleher* v. *Orr,* 183 Conn. 125, 127, 438 A.2d 843 (1981). The jury were thoroughly and adequately instructed on the matter of proximate causation and the defendant took no exception to that portion of the charge. The jury could reasonably have, as the trier of fact, arrived at the verdict which they did. In *Rapuano* v. *Oder,* 181 Conn. 515, 517, 436 A.2d 21 (1981), we said: "The test for determining the validity of the jury's verdict is whether the evidence, fairly and impartially considered, would be likely to induce in the minds of six persons of ordinary intelligence attentively considering it and using

---

aside the verdict and for judgment notwithstanding the verdict, specifically found that the Brookside Inn was "a country tavern or inn that dispensed alcoholic beverages."

[12] The defendant argues in his brief that "[t]he sole efficient cause of the plaintiff's injuries was the conduct of the plaintiff himself in proceeding into an unfamiliar area, in darkness, when he could not clearly see what lay ahead of him."

common-sense logic, a reasonable belief that it is more probable than not that the facts in issue are true. *O'Brien* v. *Cordova,* 171 Conn. 303, 305, 370 A.2d 933 (1976); *LeBlanc* v. *Grillo,* 129 Conn. 378, 382, 28 A.2d 127 (1942)." We find this claim to be without merit.

In addition, the defendant argues that the court erred in its charge to the jury "with respect to the duty of the defendant Burton under the facts and circumstances disclosed by the evidence." He claims that the charge was contradictory, confusing and, at times, erroneous; that it failed to make a distinction of "extreme importance" to the defendant; and that certain language used had the effect of making the defendant "the insurer of [the plaintiff's] safety on the premises."[13]

Applying well settled principles of review to these claims directed to the charge, we find that all of them are without merit.[14] A charge to the jury must be read as a whole; *McKiernan* v. *Caldor, Inc.,* 183 Conn. 164, 167, 438 A.2d 865 (1981); *Vandersluis* v. *Weil,* 176 Conn. 353, 360, 407 A.2d 982 (1978); and the instructions claimed to be in error read in that context. *Eckstrand* v. *Union Carbide Corporation,* 169 Conn. 337, 341, 363 A.2d 124 (1975); *Hally* v. *Hospital of St. Raphael,* 162 Conn. 352, 360, 294 A.2d 305 (1972). Error cannot be predicated on detached sentences or on portions of the

---

[13] The defendant specifically argues that the court's charge did not set out the test of the duty of the defendant as laid down in such cases as *Ford* v. *Hotel & Restaurant Employees & Bartenders Union,* 155 Conn. 24, 229 A.2d 346 (1967), and *Kopjanski* v. *Festa,* 160 Conn. 61, 273 A.2d 692 (1970).

[14] The defendant, in his brief, also objects to the court's use of the label "trespasser" as having a potential "for creating confusion and misunderstanding in the jury's minds." This claim is not only without merit, but no exception was taken which could fairly be said to have alerted the court to such a claim.

charge. See *LeBlanc* v. *Bray,* 168 Conn. 92, 93, 357 A.2d 926 (1975); *State* v. *Malley,* 167 Conn. 379, 382, 355 A.2d 292 (1974). The charge must be considered from the standpoint of its effect upon the jury in guiding them to a correct verdict. See *Gosselin* v. *Perry,* 166 Conn. 152, 163, 348 A.2d 623 (1974); *Siladi* v. *McNamara,* 164 Conn. 510, 515, 325 A.2d 277 (1973). The instructions must be correct in law, adapted to the issues and sufficient for the guidance of the jury. " 'The test of a court's charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law.' " *Lucier* v. *Meriden-Wallingford Sand & Stone Co.,* 153 Conn. 422, 425–26, 216 A.2d 818 (1966); see *Kiniry* v. *Danbury Hospital,* 183 Conn. 448, 456, 439 A.2d 408 (1981). We have reviewed the charge and hold that it correctly stated the law on the defendant's duty in this case. The charge read as a whole fairly presented the case to the jury and was correct on the law so that no injustice was done.

There is no error.

In this opinion the other judges concurred.