[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This dispute arose out of the plaintiff's hiring of the defendant to perform a home inspection of a residence the plaintiff was contemplating purchasing.
There was no written contract but the defendant did provide the plaintiff with a written inspection report. Because of the problems which ensued, this language, at page 4 in the report (Exhibit A), is pertinent:
 "The basement was dry at the time of the inspection and it appears to stay fairly dry but it should be noted that any basement below finished grade is always vulnerable to a little water seepage under extreme conditions. One of the areas in the basement is a kitchen that has a proper washer and dryer hook up, a CT Page 11996 double bowl stainless steel sink set into a Formica counter and cabinet, with a spray, poorly constructed cabinets, very poor Formica counters that have not been installed properly, some appliances, baseboard heat, hung ceiling, and some drywall construction."
After purchasing the house, the plaintiff had considerable difficulty with water seeping into the basement. The quantities were such as to substantially interfere with the use of the basement and posed a threat to any personal property located there. Long range, the partitions and doorways could deteriorate from repeated exposure to the water.
The plaintiff has sued for a breach of the contract to inspect by virtue of the alleged failure to note and report signs of a water problem. The plaintiff also alleges the defendant was negligent in the course of performing the contract.
Counsel for the parties agree that the issue is whether the agent for the defendant who did the inspection should have recognized the existence of a water problem because of what he was able to observe in the basement.
There is no question that the property has a water problem, for both experts, one called by each party, agreed on this. Both parties offered numerous photographs as supporting their positions. The Court heard conflicting testimony as to the condition of the sheet rock walls and whether they had been "cut off". There was even some disagreement about the existence of baseboards.
Some facts were not in dispute. Both experts stated that the placing of kitchen appliances off the floor on blocks would suggest a water problem. Mr. Halprin, the inspector, testified that fresh paint on a cellar floor would be suspicious and suggestive of a water problem. Mr. Palumbo had said the basement floor was freshly painted.
In an attempt to reconcile these differences and to see what the photos did not make clear, the Court offered to visit the premises. With the agreement of both parties, this was done on November 22, 1994.
Though the Court's visit occurred two and a half years after CT Page 11997 the defendant's inspection, reference to photo exhibits submitted by both sides reflects a situation which is not significantly different now than it was then.
The Court observed the following conditions. The appliances are not set on blocks. Rather, the entire kitchen portion of this room — refrigerator, range, washer, dryer, sink and cabinets are set on top of two-by-fours, set on edge. The furnace is also elevated, but this is apparently a recommended practice and may not be significant by itself.
Considering the general poor quality of all the workmanship in the basement, the Court found it significant that along one wall, at its contact with the floor, there was no visible seam. That is, one could not even insert a finger nail at the point where the basement met the floor. Mr. Halprin answered the Court's question as to this condition by saying it looked as if someone had caulked it at some time. Actually, it looked as though someone had poured concrete up to and partially over the baseboard.
An examination of door passages and wall endings shows water stains. Just outside the furnace area (the low point which collects the most water, according to Mr. Palumbo) there is no baseboard — the only wall space lacking such finish. The sheet rock wall at this point has a very unevenly cut edge, suggesting it was cut off after installation. But of particular significance is that when one examines this edge, one doesn't feel the soft and rough surface of the plaster in sheetrock, but a very hard and smooth finish. One could speculate as to how and why this came about, but when considered along with the other signs of water, a home inspector should have investigated further.
From its observations and the testimony of the plaintiff, the inspector and the two experts, the Court concludes that the inspector, the defendant's agent, should have recognized that there was a water problem. The conditions present were and are strongly suggestive of this fact and at the very least obligated the inspector to advise the plaintiff that a more detailed examination was necessary to be sure the basement was dry and sound.
By virtue of its agent's failure to perform his services in a skillful fashion, the defendant is liable to the plaintiff for those damages reasonably foreseeable. Frankovitch v. Burton,
CT Page 11998185 Conn. 14, 20 (1981).
The plaintiff is entitled to recover for the expense incurred to rent a "wet vacuum" to pump water out of the basement — $168.54. He is also entitled to a return of the fee he paid for the inspection — $200.00.
In order to solve this water problem, the plaintiff will have to install a water-proofing system. This would entail breaking up the floor along the wall, installing perforated drainage pipe in a gravel bed, and then installing a sump pump to pump away the accumulated water. Both experts agreed that this was the proper remedy, though they disagreed on the cost to perform the work. The plaintiff's expert gave his estimate at $7,500.00, the defendants expert figured $4,600.00.
Despite obvious personal animosity between these experts, and a tendency on the part of the plaintiff's expert to volunteer information and to ramble in his explanation, the Court finds the latter's estimate to be reasonable under all the circumstances.
Judgment may enter for the plaintiff in the amount of $7,868.54.
Anthony V. DeMayo, State Trial Referee