[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The above-captioned case was claimed for trial by jury; however, the parties have waived their right to jury trial and the case has therefore been tried to the court by agreement of the parties.
The plaintiff, Thomas Fiumidinisi, seeks money damages against the defendant, St. Bernadette's Church, for personal injuries he suffered on the premises of the defendant. After full trial, the court finds the facts to be as follows. On or about June 2, 1989 the plaintiff was serving as one of several chaperones for a dance being held in the church hall at St. Bernadette's Church for seventh and eight graders who attended the church's grammar school. The defendant and his then wife had agreed to chaperone at the request of their daughter, an eighth grader. A teacher, Marilyn Trotta, was in charge of the dance and of the chaperones. She asked the chaperones to take charge of setting out food, monitoring the restrooms, screening arrivals to exclude attendance by anyone who was not enrolled in the school and in the grades for whom the dance was held, and generally supervising issues of safety and decorum. Ms. Trotta did not instruct the plaintiff not to leave the church hall, nor did she or any other representative of the defendant impose on him any limitation as to where he could go on the defendant's premises.
The church complex includes the church itself, under which is the hall in which the dance was held, a school, a convent, a rectory and parking areas. The property is bounded by Townsend Avenue and Burr Street.
During the evening, two boys appeared outside the dance, first heckling the party goers and then igniting firecrackers. Ms. Trotta and the plaintiff approached the boys and asked them to leave. Approximately an hour later the same two boys returned. When the plaintiff asked them to leave they threw a firecracker toward him and swore at him, and he pursued them with the aim of convincing them to leave for good or bringing them back to call their parents to remove them.
As the plaintiff looked around the rectory area, he saw the boys hiding in a hedge. They headed for Townsend Avenue. As he began to pursue them across the side lawn of the rectory, he CT Page 7450 tripped over an object on the lawn and fell, immediately experiencing sharp pain in his right shoulder. The plaintiff abandoned his pursuit and went back into the church hall.
The defendant has admitted control of the area where the plaintiff fell.
Because of injuries suffered when he fell, the plaintiff left the dance within a few minutes and the next day sought medical attention for what was diagnosed to be a fractured humerus.
The area in which the plaintiff fell was an open lawn bordered on one side by the rectory and on the opposite side by an eight to nine foot evergreen hedge. One end of this rectangular lawn opened directly on to a church parking lot, with no fence, gate, barrier or any sign of restricted access. The opposite side of the lawn was open to the street, Townsend Avenue, likewise without a fence, wall or any other barrier between the grass and the sidewalk. The lawn was at least fifteen feet wide.
In almost the precise center of this otherwise empty lawn was a fill pipe for an oil tank that protruded approximately eight inches above the level of the ground. The pipe was approximately three inches in diameter. The court finds that on the date at issue that pipe was black and a dark metallic color and that its location was not marked by white paint or any other noticeable coloring or by any other means. At ten thirty in the evening, when the plaintiff was pursuing the trespassers, the lawn was in darkness. No lights were attached to the side of the rectory, and the light from the nearest street light was insufficient to allow the short fill pipe to be seen because of height of the hedge and the resulting shadows.
The plaintiff claims that the maintenance of an unmarked fill pipe in the middle of an open lawn constituted an unreasonably hazardous condition and that he was injured because of the defendant's negligence in failing to remedy that condition by relocating the pipe or by marking it with a barrier, a warning marking, or illumination. The plaintiff claims that he was an invitee of the defendant and as such was owed a duty of care by the owner to reasonably inspect and maintain its premises in order to render them reasonably safe or to warn of hazards. D. Wright, J. Fitzgerald and W. Ankerman, Connecticut Law of Torts (3d. ed.) § 49, p. 116-118); Morin v. Bell Court Condominium Association, Inc.,223 Conn. 323, 327 (1992). CT Page 7451
The defendant asserts that the plaintiff's status as an invitee to chaperone the dance did not extend to his presence on the rectory lawn in pursuit of hecklers. The defendant argues that the plaintiff was trespassing on the lawn and that it therefore owed him only the duty owed to trespassers, that is, not to create hidden hazards or intentionally cause him injury. Connecticut Lawof Torts, supra, § 47 p. 109.
Alternatively, the defendant argues that the plaintiff was injured on a portion of its premises as to which the invitation was not extended either expressly or impliedly, and that the defendant would not reasonably expect him to use the lawn area in connection with his functions on the premises that evening.
Under Connecticut law, an invitee who exceeds the limits of his invitation loses his status as an invitee. Whether a particular person has so lost his status depends on whether his use of the premises was such as the defendant might reasonably have contemplated. Frankovitch v. Burton, 185 Conn. 14, 21 (1981).
The Supreme Court has shifted its view on the scope of "invitations" over the years. In Knapp v. Connecticut TheatricalCorp., 122 Conn. 413, 417-418 (1937), the Court upheld a verdict in favor of a defendant movie theater owner that claimed that its invitation to a movie goer did not extend to his opening an unmarked door leading to steep stairs to a basement, absent evidence that the user was misled in some way by an ambiguity created by the defendant. Forty-four years later, the Supreme Court found in Frankovitch v. Burton, 185 Conn. 14 (1981) that a jury had not erred in concluding that a visitor to a bar who could not find the men's room had an invitation that extended to the use of a shrubbery-lined area outside and around a corner from the entrance to the bar. The court found that the jury could justifiably conclude that the presence of patrons in the outside area was a use that the defendant might reasonably have contemplated, Frankovitch v. Burton, 185 Conn. 21.
Thus, while the Court may once have thought that invitations to be present on premises were limited to areas marked for use by patrons, it appears now to recognize that patrons are owed a duty even if they use the premises in unusual ways so long as the defendant "might reasonably have contemplated" that an invitee might so stray under the circumstances. CT Page 7452
Contrary to the defendant's assertions, the Supreme Court did not base its ruling in Frankovitch on facts indicating that the defendant was actually aware of patrons' prior use of the shrubbery or that such use had occurred. Rather, the Court ruled that "the test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?"Frankovitch v. Burton, 185 Conn. 21. The Supreme Court more recently approved the same test in a different context in RKConstructors, Inc. v. Fusco Corp., 231 Conn. 381, 385 (1994).
This court finds that the plaintiff had the status of an invitee on the side lawn of the rectory, and that the defendant owed him the duty of care owed to invitees.
Because the lawn was not fenced but was open to both a street and a church parking lot, the defendant should reasonably have foreseen that people might traverse it, either in daylight or in the dark. The plaintiff did nothing unusual to gain access to the area: he merely pursued hecklers across an open area leading to the street.
The court finds that the defendant should reasonably have foreseen that a short, inconspicuous protruding pipe in the middle of an otherwise open area presented a danger of tripping, especially at night. The defendant's premises is home to a congregation and to a large population of school children. The presence of pedestrians on all parts of the grounds was foreseeable.
The evidence did not suggest that any agent of the defendant instructed the plaintiff not to leave the church hall or that it restricted him to any portion of the premises. Rather, the plaintiff was invited to act generally for the benefit of the defendant in repelling intruders, and the court finds that he was not acting outside the scope of his status as an invites when he tripped on the pipe in the dark.
The defendant has failed to prove that the plaintiff was negligent. Breaking into a run on an apparently open lawn is not an act of negligence. The court finds that an ordinarily prudent person would not have succeeded in seeing or anticipating the presence of a fill pipe in such a location.
The court finds that the plaintiff has established that the CT Page 7453 defendant was negligent and that the defendant has not established that the plaintiff was negligent in any of the ways claimed in the special defenses.
DAMAGES
The court finds that the plaintiff suffered a fractured humerus that resulted in a period of great immediate pain, intense but lesser pain over a period of several days, and diminishing pain but loss of function over a period of several months. On the basis of the evidence presented, the court finds that the plaintiff has suffered a permanent loss of mobility and function of his right shoulder such that he cannot raise the arm fully and cannot rely on it for all of its normal functions. Because the plaintiff suffered an injury to his back in an unrelated incident, the court does not find that all of the diminishment of his participation in sports was caused by the fall at issue in this case. His permanent loss of partial use of his right arm is found, however, to have been proximately caused by the defendant's negligence.
From June 3 to August 9, 1989, the plaintiff had to keep his right arm in a shoulder immobilizer and he was unable to write, use his arm, or drive a car. As of September 1, 1989, his doctor indicated that he was sufficiently recovered to perform his duties as a salesman. The court finds that his employer had terminated his employment because of the plaintiff's prolonged absence but the plaintiff acknowledged that he could probably have gotten his job back in September. He chose not to return to his job but to open a store, and the court finds that his lost earnings after September 1, 1989 were caused by his decision to go into a new area of employment, not by a disability proximately caused by the defendant's negligence.
The plaintiff underwent a course of physical therapy. In a report dated June 1, 1990, his physician reported that he has a fifteen percent permanent impairment and loss of physical function of his right shoulder. On June 16, 1995, the same doctor reported that the plaintiff continued to have reduced range of motion and occasional pain. The doctor noted that the right shoulder was exhibiting more pronounced arthritic changes as revealed by an x-ray, and he opined that the plaintiff has an eighteen percent permanent physical impairment and loss of physical function of the right shoulder, causally related to the injury he sustained on June 2, 1989. CT Page 7454
The plaintiff's life expectancy is 28.9 years.
On the basis of the foregoing findings, the court finds that the plaintiff has proved by a fair preponderance of the evidence that he has suffered the following losses proximately caused by the defendant's negligence in maintaining its premises, and that the following award constitutes full, fair, adequate and reasonable damages for all elements of his losses:
Economic Losses
 medical expenses $ 4,057.12 lost wages, net of federal withholding and social security contributions, June 3, 1989 — September 1, 1989 $596.22 x 13 weeks 7,750.86 ---------- Total $11,807.98
Noneconomic Losses
 pain, suffering, inconvenience, physical injury, permanent impairment $44,000.00 ---------- Total $55,807.98
Judgment shall enter in favor of the plaintiff against the defendant in the amount of $55,807.98. The plaintiff shall recover his court costs.
Beverly J. Hodgson Judge of the Superior Court