[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the court as the result of a fall at a Super Stop and Shop located in Shelton, Connecticut. While in the process of entering the store to do her shopping and while securing a shopping cart or carriage, she slipped on a tile floor that was wet at the time causing her to strike her back and head.
The cause of her fall was due to the wet conditions of the tile floor at the time. The evidence disclosed that it had been raining throughout the day but at the time of the fall it was reduced to a drizzle. Subsequent to her fall the plaintiff complained of pain in her left arm and shoulder and her left leg and hip. She also complained of dizziness.
After returning home Mrs. Spiteri changed her clothing which was wet from the fall and thereafter went to Griffin Hospital for medical assistance. She was administered medication for her pain and x-rays were taken. The next day she returned to the hospital for additional x-rays. Three days later, she went to see her family doctor, Doctor John Farens. He prescribed for her pain and recommended physical therapy at Rehabilitation Associates. After approximately three treatments, she discontinued the sessions due to the fact that she was about to undergo surgery to her right shoulder, which was unconnected to this incident. She received no treatment until some time six months later when she went for therapy at Rehabilitation Associates of Southern Conn. while at the same time she received therapy on her right shoulder following a third operation on her rotator cuff, she received no other treatment for the injuries she sustained in her fall at the Super Stop Shop.
The evidence discloses that the plaintiff Rose Spiteri in the company of her husband, entered the defendant store on November 8, 1997 sometime CT Page 10781 between 4:00 and 5:00 P.M. to do their shopping. It had been raining throughout the day and at that particular time it was a drizzle. They first entered through a vestibule which contained one rubber mat on the floor. They then proceeded through a second set of glass doors and the entrance to the store itself. This area had a tile floor and was the area where the carriages were stored. At the time, there was one rubber mat in this area. The plaintiff, Rose Spiteri, proceeded across the mat and onto a tile floor between the mat and the carriages. At this time her husband, noticing that the tile floor was wet, admonished her to be careful. She did not hear him and almost immediately her feet slipped out from under her and she fell to the floor striking her back and head. Suffering from pain and feeling dizzy, her husband picked her up and placed her upon a nearby bench and notified the store management of her fall. The night manager responded. He noticed that the floor was wet and ordered a porter to mop up the area and to put down more mats. He remained with her for a short period while her husband completed their shopping after which they left the store and returned home.
At the time of her fall the plaintiff was a business invitee of the defendant. As such, the defendant owes to the plaintiff a duty to exercise reasonable care to have and maintain the premises reasonably safe for the reasonably anticipated use the invitee would make of them.Kopjanski v. Festa, 160 Conn. 61, 64 (1970), Ford v. Hotel and RestaurantEmployees and Bartenders Union, 155 Conn. 24, 33, 229 A.2d 346; 38 Am.Jur., Negligence, 96.
 "Stop and Shop as the possessor of said premises owed to the plaintiff, a business invitee a duty to keep it's premises in a reasonably safe condition. If that duty was breached and if the defendant had actual or constructive notice of the defect within a reasonable time to remedy it, the plaintiff would be entitled to recover damages for her injuries. . . . Whether the defendant had constructive notice of this condition turns on whether the condition existed for a length of time sufficient for the defendant's employees in the exercise of due care to discover the defect in time to have it remedied." Gubrycz v. Stop Shop Cos., 29 Conn. App. 519, 521, (1992), (Internal citations omitted)
An abundance of time is not necessary to show a sufficient length of time existed for discovery of the condition. Only a reasonable length of time is to be determined upon the circumstances as they existed in this particular case. One must consider the nature of the business being conducted and the location of the existing conditions must be CT Page 10782 considered.
In the present case, the incident occurred at the main entrance to the store, it is the entranceway for substantially all the patrons of the Supermarket. The fact that it was raining throughout the day should have alerted the management of the store that the tile floor at the entranceway would become wet and slippery. The plaintiff fell sometime between 4:00 and 5:00 P.M. Under all of the circumstances, a sufficient length of time had existed for Stop Shop in the exercise of due care, to have discovered the defective conditions and a reasonable length of time had existed for them to have remedied it. The accident report indicated that it had been raining heavily during the day and that it was still raining at the time. That an insufficient number of mats were laid down is evident by the fact the night manager, when he arrived on the scene, ordered the porter to put down more mats. In addition, the plaintiff's husband described the wetness in the area as being murky. The sweep log (Exhibit 3) which should have disclosed the times that the area was swept or cleaned was woefully inadequate. Either it was not recorded when it was done or it was not done at all. Exhibit 4 which was described as the Safety Rules for Stop Shop. Section VII entitled "Customers Safety" makes the following statement: "The safety of the customer is of utmost importance. The Safety Promoter must perform continual inspections of the sales areas . . . to ensure that no hazards exist." Under the heading "Sweep Log" it is recommended that they should usually occur at 9:00 A.M., 12:00 P.M., 3:00 P.M., 6:00 P.M. and 9:00 P.M. The actual time swept was to be recorded and signed by the department head. Section 2 of Paragraph VII entitled Entrances and Exits states in part as follows: "During bad weather keep sidewalks and entranceways free from snow, ice and water. Also have mop at front of store to pick up excess water. Replace wet rugs as needed."
The fact that it had been raining throughout the day should have alerted the night manager to make continual inspections of an area such as the entrance. Had he done so, he would have discovered the existing conditions and taken the necessary steps to remedy the condition.
The court finds that the evidence as disclosed indicates that the defendant was not in the exercise of due care, that a sufficient length of time had existed for the defendant to have become aware of the existing conditions and to have remedied them.
In awarding damages, the court may award only those damages that are fair, just and reasonable and for which the negligence of the defendant was the proximate cause. Prior to the injuries sustained at the Stop 
Shop, the plaintiff had suffered a torn rotator cuff which required several surgeries. The plaintiff was severely limited in daily activities CT Page 10783 having little or no use of her right arm and shoulder. When first seen by her doctor after her fall, her complaints were of pain to her head, neck, left shoulder and low back. Dr. Farens referred her to physical therapy. She attended only a few sessions and had no further therapy until six months later. At that time she was having therapy to her right shoulder following surgery for her rotator cuff. She simultaneously had therapy to her left shoulder.
Dr. Farens in his final report dated November 3, 1999, assessed a 10% permanent partial disability of the left shoulder and a 7% disability of the cervical spine. He does not, however, in his report, relate her disability, with a reasonable degree of medical probability to the subject incident. Dr. Farens was to have testified but for some reason was unable to do so. Had he appeared this issue might have been resolved.
Prior to this accident, the plaintiff's ability to carry out everyday functions was severely limited due to an injury to her right shoulder. Testimony, however, indicated that she was able to make use of her left arm enabling her to do some of her daily chores. Since the accident, she has been unable to even bathe herself due to her inability to use her left arm. There is no prior history of any injury to the left arm or shoulder. While her treating physician does not use the so-called magic words "with a reasonable probability" he does relate her disabilities to her left shoulder and cervical spine. There is no prior history of any injury to her left shoulder. That she injured her left shoulder in the fall is without a doubt.
The court makes an award of economic damages in the amount of $6368.00 and an award of non-economic damages in the amount of $12,000.00. The court makes no award for future economic damages but does make an award of future non-economic damages in the amount of $33,000.00. The court finds the plaintiff to be negligent at the time of her fall having failed to exercise that degree of care that a reasonably prudent person would have under the conditions that existed at that time. This the court finds to be 15% thus reducing the total amount of her damages to $43,663.00.
At the time of trial the plaintiff Joseph Spiteri did not pursue his claim for loss of consortium therefore the court considers that claim to be abandoned.
Judgment may enter in accordance with the above.
THE COURT
by CT Page 10784 CURRAN, J.