## PATRICIA SWAIN *v.* STEVEN LENINSKI ET AL.

Superior Court, Judicial District of New Haven—File No. CV 99-0432164S

Memorandum filed March 26, 2003

*John A. Keyes,* for the plaintiff.

*Wilson, Fusco, Beyer & Lynch,* for the named defendant.

*Russo, Larose & Bresnahan,* for the defendant Marie Danielle LTD.

*Nuzzo & Roberts,* for the defendant Beyond Expectations, LLC.

*Halloran & Sage,* for the defendant town of Guilford.

No appearance for the defendants Ernest Thompson and Deborah Thompson.

BLUE, J. The common law frequently organizes itself in terms of categorical rules. Possessors of land owe different duties to trespassers, licensees, and invitees. *Morin* v. *Bell Court Condominium Assn., Inc.,* 223 Conn. 323, 327, 612 A.2d 1197 (1992). Bystanders can recover for emotional distress only if they are closely related to injury victims. *Clohessy* v. *Bachelor,* 237 Conn. 31, 52, 675 A.2d 852 (1996). A similar categorical

rule governs the law pertaining to public sidewalks. "An abutting landowner, in the absence of statute or ordinance, ordinarily is under no duty to keep the public sidewalk in front of his property in a reasonably safe condition for travel." *Wilson* v. *New Haven*, 213 Conn. 277, 280, 567 A.2d 829 (1989).

Patricia Swain, the plaintiff in the case now before the court, claims that she slipped and fell as the result of a defect in the sidewalk in front of property leased by one of the defendants, Marie Danielle LTD (Danielle), shortly after exiting Danielle's premises. Danielle has moved for summary judgment, contending on the basis of *Wilson* that it had no duty to keep the sidewalk in question safe. Swain has responded by citing another categorical rule of the law of negligence. Whether or not a possessor of land is in control of an abutting sidewalk, it has a duty to take appropriate steps to prevent its invitees from using dangerous exits from its property. *Ford* v. *Hotel & Restaurant Employees & Bartenders Union*, 155 Conn. 24, 35, 229 A.2d 346 (1967). The court must now determine which categorical rule governs the present case.

The materials submitted to the court establish that on October 22, 1997, Swain was a business invitee of Danielle, a shop located on leased premises at 63 Whitfield Street in Guilford. The front entrance of Danielle opens onto a sidewalk along Whitfield Street. The sidewalk, which runs from south to north, is 12 feet wide. The alleged defect, a depression in the sidewalk, is 6 feet east of Danielle's entrance, halfway between the front of the property and the street, and an additional 6 feet north. Swain's deposition testimony states that, after shopping in Danielle, she left the shop, went a few feet north (past the point of the alleged defect), engaged in a brief conversation with a friend, and then "turned to go south to visit more stores." At that point, she fell as a result of the alleged defect.

Swain commenced this action by service of process on October 20, 1999. There are several defendants, but Danielle is the only defendant in question here. The fourth count of Swain's amended complaint alleges that Swain's damages were caused by Danielle's negligence "in one or more of the following ways: a. The walk was uneven, broken, not level or depressed; b. Said area was not cleaned or swept; c. Said area was not isolated from public travel and/or the defendant store did not warn its patrons of the problems with the walk; d. Said area was not properly constructed, repaired, kept, inspected or maintained; e. There was a large improper depression, covered with leaves thereon[; and] f. Said Defendant did allow leaves to accumulate on said walk, thereby concealing and covering from view the cracked surface thereof." The fourth count additionally alleges that Danielle "knew or should have known that [its] customers, including plaintiff, would enter and exit through the Whitfield Street door, and be injured by the defect(s) in the sidewalk described above."

On April 17, 2001, Danielle filed the motion for summary judgment now before the court. The motion contends that, "As an abutting leaseholder, the Defendant had no duty of care to the plaintiff with respect to the sidewalk upon which she was allegedly injured." Following a delay of Dickensian proportions, the motion was heard on March 25, 2003.

Danielle, as mentioned, relies on the clear rule of *Wilson* that an abutting landowner is under no duty to keep the public sidewalk in front of its property in a reasonably safe condition for travel. Swain admits that no applicable statute or ordinance abrogates this duty. She instead offers two counterarguments. First, Swain claims that Danielle acquired responsibility because of certain "positive acts" performed with respect to the sidewalk. Second, Swain claims the benefit of the "dangerous exit" theory of *Ford*. Under the circumstances

of this case, neither of Swain's counterarguments are persuasive.

"An abutting landowner can be held liable . . . for injuries resulting from the unsafe condition of a public sidewalk caused by the landowner's positive acts." *Abramczyk* v. *Abbey*, 64 Conn. App. 442, 446, 780 A.2d 957, cert. denied, 258 Conn. 933, 785 A.2d 229 (2001). This exception is illustrated by two Supreme Court decisions from the first half of the twentieth century. *Hanlon* v. *Waterbury*, 108 Conn. 197, 142 A. 681 (1928), involved a defendant who maintained a gas pump 4 inches away from a tar sidewalk. Gasoline would spill from the pump onto the sidewalk, rendering it unsafe for travel. The defendant was deemed responsible for the condition, just as he would have been had he "by his act made a dangerous hole in a sidewalk." Id., 200. Similarly, *Perkins* v. *Weibel*, 132 Conn. 50, 42 A.2d 360 (1945), involved a defendant who operated a restaurant and allowed grease to seep from the front of his building and accumulate on the public walk. He, like the defendant in *Hanlon*, was held responsible for the resulting condition. Id., 52.

Swain identifies two "positive acts" here. One asserted "positive act" is Danielle's act of signing a lease that assertedly required it to maintain the premises. Swain, however, offers no explanation as to how the signing of the lease in any way caused her fall. The signing of the lease was nothing like the spilling gas in *Hanlon* or the seeping grease in *Perkins*. It did nothing to create the alleged defect.

The second "positive act" that Swain identifies is evidence that Danielle periodically swept the sidewalk in front of its entrance, sometimes as often as 3 times a day. Sweeping of this description is not, however, a "positive act" that imposes on the sweeper the responsibility of maintaining the sidewalk in a reasonably safe condition.

If Danielle's sweeping had somehow caused Swain's fall, the "positive act" exception of *Hanlon* and *Perkins* would apply. Here, however, Danielle's sweeping played no such causative role. Swain's amended complaint, in fact, makes precisely the opposite assertion. Instead of sweeping the walk, we are told, Danielle "allow[ed] leaves to accumulate" on the walk. It was the accumulation of leaves, rather than the sweeping of leaves, that allegedly caused Swain's fall.

*Abramcyzk* is instructive on this point. Abramcyzk was injured when he tripped over a raised cast-iron water pipe on defendant Abbey's premises, but within a right-of-way owned by the city of Bristol. The city had installed the pipe in 1937. Abbey "mowed the grass and removed weeds from the area around the pipe but did not engage in any affirmative act to change the condition of the pipe or to conceal the pipe in any way." *Abramczyk* v. *Abbey*, supra, 64 Conn. App. 444. Under these circumstances, there was no "evidence to prove that the defendant's positive acts caused the water pipe to be a tripping hazard. Thus, the defendant is not liable." Id., 447.

A different rule would create a perverse incentive. The law should, if anything, *encourage* abutting landowners to mow grass and sweep sidewalks. If the law were to hold that mowing and sweeping are "positive acts" creating liability where liability did not previously exist, abutting landowners would be well advised not to mow or sweep. This is not an incentive that the law should create. Danielle's sweeping was not a "positive act" rendering it liable for Swain's fall.

Swain's reliance on *Ford*'s "dangerous exit" theory is equally unavailing. *Ford* involved a dance held by the defendant in a state armory. A fire exit from the armory led to a parking lot by way of an unlit path going by an open stairwell. Ford left the dance and

was injured when he fell in the stairwell. Under these circumstances, the defendant was held liable, even though it was not in control of the stairwell. "Whether or not the defendant was in control of the parking lot and the unguarded stairwell is not a determining factor in this case. The defendant was in actual control of the . . . door leading to the parking area, and, in the exercise of reasonable care, it should have known of the existence of the dangerous condition and should have taken appropriate steps to prevent its invitees from using the door." *Ford* v. *Hotel & Restaurant Employees & Bartenders Union*, supra, 155 Conn. 35.

*Ford* sits uneasily with sidewalk cases like *Wilson*. If abutting landowners, such as stores, have a duty to warn patrons of sidewalk defects in front of their property, then *Wilson*, which holds that abutting landowners are under *no* duty to keep the sidewalk "in front" of their property in reasonably safe condition, would be rendered a dead letter. Landowners with businesses or residences facing public sidewalks would acquire a duty to repair or warn that they do not now have. *Ford*, which involved a fire exit leading to a dangerous passageway, can best be viewed as an unusual case having nothing to do with the usual scenario of a public sidewalk in front of a business or residence.

*Ford* arguably has no applicability to public sidewalk cases. Alternatively, *Ford* arguably creates an exception to the *Wilson* rule in cases where a dangerous defect exists immediately outside an exit. If a public sidewalk contains a hole immediately outside an exit into which a person using that exit is likely to fall, an abutting landowner arguably has a duty to warn persons using that exit. That hypothetical situation, however, did not occur here and this doctrinal problem need not be further addressed. The evidence submitted to the court in this case establishes that Swain, after leaving Danielle's assertedly dangerous exit, turned north, went past the

alleged defect in the sidewalk, engaged in a brief conversation with a friend, and then turned south to visit more stores. Her fall thus occurred when she was a user of the public sidewalk, indistinguishable from any other user of the public sidewalk. Under these circumstances, Danielle had no greater duty to warn Swain than it had to warn any other user of the public sidewalk. Under *Wilson*, that duty was nonexistent.

The motion for summary judgment is granted.