HOLLOWELL ET AL. SPECIAL CO-ADMRS. ESTATE KIRAZIAN, DECEASED v. GREENFIELD BY NEXT FRIEND.

[No. 20,152. Filed May 13, 1966. Rehearing denied June 3, 1966. Transfer denied March 18, 1968. Rehearing on transfer denied April 29, 1968.]

*Alembert W. Brayton,* of counsel, *Kriner and Harman,* of Indianapolis, and *James D. Acher,* of Franklin, for appellant.

*Earl C. Townsend, Jr., John R. Townsend, Townsend and Townsend,* of Indianapolis, and *Richard L. LaGrange,* of Franklin, for appellee.

SMITH, P. J.—This is an action for damages for personal injuries to the appellee-plaintiff, an eleven year old boy predicated on the alleged negligence of the appellants-defendants' decedent.

The relevant facts as evidenced by the record are that on August 29, 1959, Samuel Kirazian owned the business known as Ashjian Bros. Rug Cleaning Co. located in the City of Indianapolis. Mr. Richard Greenfield, the appellee's father, had been an employee of the establishment for some seven years. The plant employees worked the five day week except for Mr. Greenfield. Kirazian employed him to drive a truck Monday through Friday and to keep the plant open on Saturday from 9 A.M. until noon to service customers and answer the telephone. Kirazian furnished him a key and placed him

in exclusive possession of the plant on Saturdays. Besides answering the telephone his duties also consisted of cleaning small rugs left over from Friday nights and to size and bleach the fringes on repaired rugs. For about two years Mr. Greenfield had been in the habit of bringing his son, the appellee herein, to the plant with him on these Saturday mornings.

On the Saturday morning that the injury occurred Mr. Greenfield again brought the appellee to the plant with him. The appellee entered and went into the back of the plant, along with his brother who accompanied Mr. Greenfield and the appellee that day. There was also evidence that a third child entered the plant from the rear and together the three began stuffing "comic books" through a wringing machine used in the plant operation. When the appellee attempted to pass a comic book through the rollers his left hand was seized by the rollers mashing his fingers and requiring the amputation of all of them except the ring finger.

The appellee's complaint charged that Kirazian and the appellee's father were negligent in the following respects:

(a) They knowingly invited children of tender years, and particularly this plaintiff, to enter said premises and play therein on Saturday mornings, despite the fact that said heavy rollers were operated by electric motors which could readily be started by a child's merely pushing the operating bar which was within his easy reach and when they should have foreseen, in the exercise of reasonable care, that said children, including particularly this plaintiff, might be attracted to play with said wringer device.

(b) They failed to maintain and operate any character of master switch which cut off the power to said wringer motors when the plant was not in operation and when said children, particularly this plaintiff, played therein on Saturday mornings pursuant to the invitation and knowledge of Kirazian and his said agent.

(c) They failed to prevent plaintiff from playing with the wringer and failed to warn plaintiff of the dangerous character of said wringer device and how it would readily draw his little hand into it in event it was turned on when his

hand was close to it or holding something that might enter said wringer.

(d)   They failed to provide and maintain any character of guard or device to prevent the hands of persons operating said device from being drawn into the rollers and particularly this plaintiff whom they invited to be present in and to play in and upon said premises.

(e)   They negligently and knowingly showed plaintiff how to operate said wringer and permitted plaintiff and other children to play with said wringer and to press rags and papers therein when, in the exercise of reasonable care they knew or should have known that said tool was dangerous and likely to cause harm to a child of tender years, to-wit: the plaintiff who was only eleven years old and did not recognize the dangers of playing with said machine.

The appellee did not join his father as a party defendant but only charged that his father was the duly constituted and acting agent of the owner of the plant and that he was acting in the scope of his employment, thereby imputing the negligence of the appellee's father to the employer.

On April 12, 1962, Samuel Kirazian died and Robert Hollowell and Frances Haboush were appointed Special Co-Administrators of the estate. The court then ordered that Hollowell and Haboush be substituted as defendants. Proper service of summons was then issued to them as Special Co-Administrators.

Trial was had by jury which found for the appellee and assessed damages in the sum of $55,000.00. Judgment was entered in accordance with the verdict.

The sole assignment of error is the overruling of the motion for a new trial. Specifically the appellants have raised four specifications of error on which they rely for reversal.

The first specification of error urged by the appellants is that the trial court erred in failing to direct the jury to return the verdict in favor of the appellants. They contend that the

court should have directed the verdict for three reasons to-wit: that the appellants' decedent did not owe the appellee the duty to treat him with reasonable care; that the appellee failed to show that the appellants' decedent was negligent; and that the evidence showed that the appellee was guilty of contributory negligence as a matter of law.

In answering these alleged errors we will deal with them separately although the appellants have grouped them under one assignment. The first to be so discussed is the contention that the appellee failed to prove that the appellants' decedent owed the appellee a duty of due care and for that reason the trial court should have directed the verdict. The argument propounded is that the appellee was a trespasser, or a mere licensee, and that therefore the only duty owed to the appellee was freedom from willful and wanton negligence.

A proper reply to this contention necessitates this court to first review the definition of an invitee and then to review the evidence most favorable to the appellee to determine if there was substantial, reliable, and probative evidence upon which the court's decision to submit the case to the jury could be founded.

This jurisdiction has long followed the Common Law in defining an invitee as a person who proceeds on the premises of another with the express or implied invitation of the owner or occupant to do some act which is of advantage to such owner or occupant or of mutual advantage to both. *Samuel F. Pentecost Const. Co.* v. *O'Donnell* (1942), 112 Ind. App. 47, 39 N. E. 2d 812.

A trial court may properly give a pre-emptory instruction to the jury ordering them to find for the defendant only when there is a total absence of evidence, or legitimate inference, in favor of the plaintiff upon an essential issue, or where the evidence is without conflict and susceptible of but one inference and that inference is in favor of the defendant. *Jackson Hill Coal & Coke Co.* v. *Bales et al.*

(1915), 183 Ind. 276, 108 N. E. 962; *Slinkard* v. *Babb, Wilson* (1953), 125 Ind. App. 76, 112 N. E. 2d 876.

In summarizing the evidence most favorable to the appellee we find that there was evidence presented that tended to prove:

For about two years Mr. Greenfield had taken Appellee into the plant to help him carry out his work on Saturday mornings. Appellee often would help with washing the rugs and with putting them through the wringer and with rolling them up as they came out of the wringer. Mr. Greenfield showed Appellee how to start and stop the wringer by pulling and pushing the control bar. But no one ever warned Appellee that the wringer was dangerous despite the fact it was constructed in such a manner that when the rollers were touching each other they would crush a human hand if the hand got between them. Kirazian had failed to install a master switch to cut off the electric power to the wringer when the plant was not running. Therefore, the wringer was always a potential danger to children because it was always ready to be started by any child who pushed the control bar. Mr. Greenfield would pay Appellee a quarter or some other sum of money to help with the work in the plant on Saturday mornings.

On four occasions Mr. Kirazian came to the plant on Saturday mornings and saw Appellee there playing or helping his father with the work. Kirazian saw Appellee in the office, in the drying room and just about anywhere in the building and never objected to Mr. Greenfield bringing Appellee in to help with the work or to be in the other parts of the plant. In fact, he joked about it and said, "I suppose your father is paying you for the good work that you are doing," when he saw Appellee helping his father operate the very wringer which was to injure Appellee later.

Although the employees were under strict orders from Mr. Kirazian to turn the large wheel at the end of the wringer on Friday evenings so as to raise the heavy top rubber roller off the bottom one to prevent the rollers from becoming flat over the weekends, this had not been done on Friday, August 28th, and the rollers were in a dangerous position touching each other on Saturday morning, August 29th. This dangerous condition of the rollers was not noticed by Mr. Greenfield until after Appellee's accident. On Saturday morning, August 29th, at about 11:30, Appellee entered

and went into the back of the plant, acting upon the parent-employee's invitation. Mr. Greenfield already had invited Appellee's brother Sammy and a little colored boy also named Sammy, who had entered through the open garage door, to play in the back part of the plant around the wringer that morning. Mr. Greenfield had opened the garage door to cool off the plant. The other employees had left a quantity of comic books that were attractive to children in the back room near the wringer and Appellee and his brother were attracted to go back there to look at them. Mr. Greenfield had permitted the little colored boy to play in the plant with his boys on three or four previous Saturday mornings. He had brought Appellee to the plant on Saturdays to keep him company.

While Appellee was playing back near the wringer with the two Sammys one of the children pushed the operating bar starting the wringer and when Appellee attempted to pass a comic book through the rollers his left hand got caught between the rollers mashing off all the fingers but one. While the accident was taking place Mr. Greenfield was in the office carrying out his specified duty of answering the telephone.

Immediately after the accident Mr. Greenfield admitted that Appellee's injury was his fault for having shown Appellee how to operate the wringer.

In reviewing this evidence we cannot say that there was no evidence, or that no legitimate inferences could be raised, that the boy was not on the premises that tragic day without at least the implied permission of the owner. On at least four occasions Kirazian came to the plant on these Saturday mornings and saw the boy there playing or helping his father with the work. Kirazian never objected and at least once he witnessed the boy helping his father operate the very machine which was to later cause the child to lose four fingers. Whether or not the boy was a licensee or whether he had indeed achieved the status of an invitee is a thin line to distinguish. The question is troublesome yet we are convinced that the record as summarized above discloses a situation calling for the submission to the jury of the question of whether or not, under all the facts, circumstances, and

conditions reflected by the direct evidence and the reasonable inferences deducible therefrom, the appellee was owed a duty of due care.

The second part of the appellants' first specification of error is the contention that the trial court should have directed the verdict because the appellee failed to prove any negligence on behalf of Kirazian. In refuting this contention we must apply the same rule as enunciated above in *Jackson Hill Coal Co., supra,* and review the evidence most favorable to the appellee. The appellants contend that the employee-parent was not acting within the scope of his authority when he permitted and taught the appellee to run the wringer. However, the evidence showed that Kirazian saw the appellee working at the wringer with his father and joked about it in an approving manner. The jury had a right to find that it was negligent for Kirazians employee in control of such a dangerous machine to show a child how to operate it and to let him play unsupervised and unwarned back where the natural curiosities of his tender age were likely to be aroused so as to cause him to play with the unguarded electric powered machine. The appellants contend that the employee-parent was not acting within the scope of his authority when he permitted and taught the appellee to run the wringer. However, the evidence showed that Kirazian saw the appellee working at the wringer with his father and uttered not a word of objection. The jury had a right to infer that Kirazian had known of the practice of appellee to play and work in the plant for two years and accepted the benefits that came to his business from the appellee's work and by failing to say one word of disapproval of the appellee's activities the jury had a right to infer that Kirazian ratified Mr. Greenfield's acts done there with respect to the appellee as being within the scope of his authority under the theory of *respondeat superior.* It all boils down to the fact that it was negligent, and the jury so found, for Kirazian's employee to allow the child to operate

the machine. Under the doctrine of *respondeat superior* and in light of the fact that there was evidence that Kirazian had ratified Mr. Greenfield's acts the jury could properly find that Kirazian was guilty of negligence and therefore the assigned error is invalid.

The third argument under the first assignment of error is that the court erred in failing to direct the verdict because, the appellants urge, the evidence showed that the appellee voluntarily and wilfully inflicted his own unfortunate injury.

A jury properly instructed, can decide the issue of contributory negligence and without doubt the trial court has the power to rule on contributory negligence as a matter of law when the facts presented warrant such a ruling. Such a situation would require that the evidence would overwhelmingly establish and without grounds upon which reasonable men may differ that the child had the ability to realize and appreciate the danger and that the conduct was below that of an ordinary child of like age, intelligence and experience. *Indianapolis Railway* v. *Williams* (1944), 115 Ind. App. 383, 59 N. E. 2d 586.

The only question again for this Court to determine is whether there was evidence produced at the trial which was sufficient to be submitted to the jury in order to allow them to decide whether the boy could properly be charged with contributing to his own injuries, or, on the other hand, the evidence so overwhelmingly established that the child had the requisite mental capacity and recognized the danger or should have recognized the danger but failed to exercise such care as naturally would be expected of a child of his age and experience. The rule has been stated that if there is any evidence to support an issue although the evidence is slight, it should be submitted to the jury. However, to require an issue to be submitted to the jury there must be something more than a mere scintilla of evidence and a party is not entitled to go to the jury on a fact where there is no

evidence on which the jury can in any justifiable view find for the party producing it. *Bradford* v. *Chism* (1962), 134 Ind. App. 501, 186 N. E. 2d 432; *Milto* v. *Richardson* (1956), 126 Ind. App. 148, 131 N. E. 2d 151; *Leader* v. *Bowley* (1961), 132 Ind. App. 528, 178 N. E. 2d 445.

Applying these rules to the evidence produced at the trial of this cause we are of the opinion that there was conflicting evidence and therefore this case was properly submitted to the jury. The question of what is a reasonable standard of care for an eleven year old boy is so troublesome it belies the imagination. The question presents itself as thus: would an eleven year old boy climb a dangerous tree; would he operate a bicycle in heavy traffic disregarding the rules of traffic; would he play with a loaded firearm given to him by another; or more appropriately would he stuff "comic books" through a dangerous piece of machinery in a place to which he was brought and allowed to roam at will by persons who accumulated far more years and supposedly more maturity than he? It was for the jury to decide whether a youth of these tender years should demonstrate more foresight and wisdom to refrain from engaging in such a hazardous activity when his seniors who had given him the inclination and the opportunity failed to do so. Therefore, we reject the appellants' contention that the boy was guilty of contributory negligence as a matter of law and we hold that the court properly allowed the question to be decided by the jury.

The second specification of error relied upon by the appellants is that the court committed error in overruling their motion to strike the appellee's supplemental complaint from the files. The appellants contend that the appellee substituted a new and different cause of action for the original action. The error alleged is that after Kirazian died the action was changed from an action against an alleged partnership comprised of Samuel Kirazian and Frances Ha-

boush, doing business as Ashjian Bros. Cleaning Co., to an action against the estate of Samuel Kirazian as an individual doing business under the firm name of Ashjian Bros. Cleaning Co. through a supplemental complaint filed subsequent to said death and misused for the purpose of so changing the theory of the appellee's action. However, this contention is without merit as there can be no reversible error predicated upon the action of a trial court in overruling a motion to strike even though such ruling may be erroneous. *Ellis et al.* v. *Haines* (1963), 134 Ind. App. 528, 188 N. E. 2d 835; *American Income Ins. Co.* v. *Kindlesparker* (1941), 110 Ind. App. 517, 37 N. E. 2d 304; *Foudy, Admr.* v. *Daugherty* (1947), 118 Ind. App. 68, 76 N. E. 2d 268.

The third specification of error relied upon by the appellants is that the trial court committed certain irregularities during the proceedings. The first such irregularity listed is that the court erred in permitting the attorney for the appellee in closing arguments to characterize one of the instructions as the appellants' instructions. The second irregularity was for the court to permit the attorney for the appellee in his closing argument to address one of the jurors by name. The third objection was directed to the appellee's attorney exhibiting to the jury the appellee's injured hand.

In answering these objections the only treatment this Court need give is to state that these "irregularities" contain no argument nor are they supported by authorities in the appellants' brief and, therefore, under Supreme Court Rule 2-17 (e) they are waived. See also *Lambert et al.* v. *Hartman et al.* (1964), 137 Ind. App. 328, 201 N. E. 2d 783.

The final specification of error relied upon by the appellants is that the award of the jury was excessive. In order to reverse for excessive damages the verdict must indicate that the jury was acting from partiality, prejudice or corruption. *Indpls. Transit Inc.* v. *Moorman* (1963), 134 Ind. App. 572, 189 N. E. 2d 111.

Before trial it was stipulated by counsel that at the time of the injury the appellee had a life expectancy of 59.55 years. An award of $55,000 therefore is less than $1,000.00 per year for the remainder of the child's life. In view of the seriousness of the injury and the long life span of the boy we cannot say that the verdict was so excessive as to be motivated by partiality, prejudice or corruption.

We have carefully considered the appellants' allegations of error and are of the opinion that no substantial error was committed and therefore the judgment of the trial court is affirmed.

Affirmed.

Bierly, Hunter and Mote, JJ., concur.

NOTE.—Reported in 216 N. E. 2d 537.