**James O. JOSEPH, Appellant,**

v.

**CALVARY BAPTIST CHURCH, Appellee.**

**No. 27A04-8602-CV-37.**

Court of Appeals of Indiana, Fourth District.

Nov. 26, 1986.

Manuel P. Guerrero, Marion, for appellant.

Albert C. Harker, Kiley, Osborn, Brown, Kiley, Harker & Rogers, Marion, for appellee.

MILLER, Judge.

James Joseph, a member of Calvary Baptist Church (Church), was injured while voluntarily repairing the Church roof when a ladder he was descending fell, allegedly because one of his fellow church members set up the ladder negligently. Joseph brought suit against the Church, on the theory that the Church was liable for the negligent actions of its agent. The Church moved for summary judgment, which the trial court granted. The court held the Church owed no duty of care because Joseph was a church member volunteering his services. The court further held that, even if the Church did owe Joseph a duty of care, the duty owed him was merely to refrain from willfully or wantonly injuring

him, since the court found him to be a licensee.

The court committed legal error in granting summary judgment in favor of the Church. Accordingly, we reverse.

### FACTS

On July 7, 1982, James Joseph, a deacon of the Calvary Baptist Church, and several other members of the church, were helping to repair the roof of the church. The roof was divided into an upper and lower portion; Joseph was working on the lower portion with Willie Wofford. Another church member, Al Green, was responsible for keeping the roofers supplied with shingles. He moved the ladder the roofers used to ascend to the roof periodically so he could deliver shingles to whichever workers needed them. The last time he moved the ladder he thought it felt uncomfortable when he set it up.

After the men worked for some time, they ran short of materials. They agreed to take a break and then bring up more roofing material. Joseph stepped onto the ladder and it began to fall. Wofford tried to grab Joseph but missed him, and Joseph fell onto a concrete sidewalk. Joseph broke his heel and suffered possible internal injuries as a result of the fall.

The church leadership had requested the aid of Joseph and the other volunteers in order to save money on the repair project. The Church agreed to purchase the roofing materials if the men of the Church would volunteer the labor. Joseph and the others agreed and volunteered their services.

### DECISION and

#### Issue I

*Liability of Unincorporated Associations to their Members*

The trial court erred in holding Joseph was precluded from recovering because he was a member of the Church. Calvary Baptist Church is, like many churches, an unincorporated association. In the majority of our sister jurisdictions, members of an unincorporated association

cannot sue the association for tortious actions. *See generally* 7 C.J.S. Associations § 51 and cases cited therein. This rule is based on the theory that the actions of the association are to be attributed to each of its members. Since the member could not sue himself for negligence, he cannot sue the association for negligence attributed to him. *DeVillars v. Hessler* (1950), 363 Pa. 498, 70 A.2d 333; *see* Annot., 14 A.L.R.2d 473 (1950). This rule is by no means universally applied. *See e.g. Marshall v. International Longshoremen's Union* (1962), 57 Cal.2d 781, 22 Cal.Rptr. 211, 371 P.2d 987, 7 C.J.S., *supra.*

In Indiana, we have rejected the majority rule. In *O'Bryant v. Veterans of Foreign Wars* (1978), 176 Ind.App. 509, 376 N.E.2d 521, the second district specifically held an association to be amenable to suit by its members. The court based its decision upon Ind.Rules of Procedure, Trial Rules 17(B) and (E), which read:

"17(B) Capacity to sue or be sued. The capacity of a party to sue or be sued shall be determined by the law of this state, including its conflict rules, except that a partnership or unincorporated association may sue or be sued in its common name.

17(E) Partnerships and unincorporated associations. A partnership or an unincorporated association may sue or be sued in its common name. A judgment by or against the partnership or unincorporated association "shall bind the organization" *as if it were an entity.* A money judgment against the partnership or unincorporated association shall not bind an individual partner or member unless he is named as a party or as a member of a class in an appropriate action (Rules 23 and 23.2)." (emphasis added)

The *O'Bryant* court reasoned that T.R. 17(B) and T.R. 17(E) disavowed the common law view that the actions of an association were to be attributed to each of its members, since the rules provided suit could be initiated by or against the association in its own name, and not in the name of each of the members. The court further reasoned that, since the actions of the association were no longer to be attributed to each individual member, the members could sue the association.

The Church argues *O'Bryant* was decided incorrectly. In the Church's opinion, the *O'Bryant* court confused substantive and procedural law in deciding the case. Our reading of *O'Bryant* leads us to conclude the Church is mistaken.

Judge White noted T.R. 17(B) and T.R. 17(E) were adopted by the 1969 session of the General Assembly and published as Acts of 1969, chapter 191, sec. 1, pp. 584–585. These rules were later adopted without change by order of the Indiana Supreme Court dated July 29, 1969 and effective January 1, 1970. Since the rules were enacted not only by our supreme court, but also by our legislature, Judge White held they are both procedural and substantive rules of law. We agree with Judge White's analysis, and we see no reason to disavow *O'Bryant.*

The Church argues that, even if most unincorporated associations are amenable to suit by their members in Indiana, religious societies should not be. In support of this contention, the Church cites *Goard v. Branscom* (1972), 15 N.C.App. 34, 189 S.E.2d 667, *cert. denied*, 281 N.C. 756, 191 S.E.2d 354. In *Goard*, the North Carolina Court of Appeals affirmed a summary judgment in favor of a church in a negligence action filed by one of the members of the church. The court held that, while a stockholder could sue his corporation for negligence in North Carolina, a church member could not sue his church for negligence because a church is a *quasi* corporation in that state.

Our reading of *Goard* convinces us that it conveys no protection to churches which is not available to *quasi* corporations generally in North Carolina. The court stated the reason churches could not be sued by their members was because, "a member of such a *quasi* corporation is engaged in a joint enterprise and may not recover from the *quasi* corporation damages sustained

through the tortious conduct of another member thereof." *Id.*, at 189 S.E.2d 670. It is clear *Goard* does no more than state the majority rule that members may not sue unincorporated associations or *quasi* corporations; it does not establish any special protection for religious societies or churches.

*Goard* offers no justification for treating churches and religious societies differently than we treat other unincorporated associations; we can see no good reason to do so. We therefore decline the invitation to create an exception to Indiana's general rule governing liability of unincorporated associations, and we hold that churches are amenable to suit by their members to the same extent as are all other unincorporated associations in this state.

## Issue II

### Joseph's Status: Licensee or Invitee?

The trial court gave a second reason for granting summary judgment in favor of the church. In the court's opinion, summary judgment was appropriate even if the Church was amenable to suit because Joseph was a mere licensee, and the Church was not liable for merely negligent conduct toward him. The trial court erred in reaching this conclusion.

■ A motion for summary judgment is not to be granted lightly, since the granting of the motion cuts off the right of the losing party to fully litigate the claim. Summary judgment is not meant to be a means of circumventing jury trials, nor is it meant to be a means of allowing the trial judge to decide where the preponderance of the evidence lies before the evidence has been fully presented. Ind.Rules of Procedure, Trial Rule 56; *Letson v. Lowmaster* (1976), 168 Ind.App. 159, 341 N.E.2d 785. Summary judgment is properly granted only where there are no conflicts as to any material fact, *Letson, supra,* and where there is no conflict as to any material inference which could reasonably be drawn from the facts. *Woznicka v. McKean* (1969), 144 Ind.App. 471, 247 N.E.2d 215. When reviewing a summary judgment, we take all allegations of the non-moving party's affidavit as true, and we liberally construe depositions, admissions, answers to interrogatories, and testimony in favor of the non-moving party. *Swanson v. Shroat* (1976), 169 Ind.App. 80, 345 N.E.2d 872; *Podgorny v. Great Central Insurance Co.* (1974), 160 Ind.App. 244, 311 N.E.2d 640.

■ In this case, Joseph's right to recover from the Church depends upon his status at the time he was injured. *Gaboury v. Ireland Road Grace Bretheren, Inc.* (1983), Ind., 446 N.E.2d 1310. In Indiana, any person on the land of another falls into one of three traditional common law categories; he is a trespasser, a licensee, or an invitee. *Barbre v. Indianapolis Water Co.* (1980), Ind.App., 400 N.E.2d 1142. Neither party suggests Joseph was a trespasser; he claims he was an invitee and the church claims he was a licensee. If Joseph was an invitee, he would only have to plead and prove the negligence of the church or one of its agents caused his injury to recover. If he was a licensee he would have to plead and prove wanton or willfull conduct on the part of the church caused his injury to recover.

■ Under our law, an invitee is one who is on the property of another for the economic benefit of the owner or for the economic benefit of both parties. *Mullins v. Easton* (1978), 176 Ind.App. 590, 376 N.E.2d 1178. One who enters onto the property of another for reasons unrelated to the economic interest of the owner is a licensee. *Id.*

■ When we apply the foregoing principles to the case before us, it is clear Joseph presented relevant material which disputes the trial court's conclusion that he was a licensee. Joseph claims he was on the Church property for the economic benefit of the Church. His claim is supported by the affidavit of the Reverend F.H. Wilson and the depositions of several church members. Reverend Wilson, the pastor of Calvary Baptist, stated he "encouraged William O. Joseph and others to enter upon the church premises at 3225 South Wash-

ington Street, Marion, Indiana, *to further church purposes, namely to provide a new roof to the Calvary Baptist Church ....*" Record, p. 106 (emphasis added). Reverend Roy L. Foard, another minister at Calvary Baptist, testified in his deposition, "the men of Calvary ... decided the church was leaking and we decided that we should put a roof on. *We didn't have the money to put it on, so we just, we were going to, the men were going to do it. ....*" Record, p. 164 (emphasis added). These statements, construed favorably to Joseph as the non-moving party, *Swanson, supra*, suggest the Church received a tangible economic benefit from Joseph's labor—the Church got the roof repaired, which it might not have been able to do without Joseph's labor. It was error for the trial court to grant summary judgment because the question of whether the church benefitted from Joseph's presence on its property was material and was in dispute.

▉ Finally, the Church argues we should not focus on the question of whether the Church actually received, or intended to receive, an economic benefit from Joseph's presence on its property. The Church urges us to focus *only* on *Joseph's* purpose for entering onto the property in order to determine his status. The Church then argues that, as a matter of law, no Church member who enters onto Church property can be an invitee because any Church member who participates in a Church function or aids the Church in any way is doing so for personal spiritual benefit. In the view of the Church, Joseph's sole purpose for entering onto the property was to benefit his soul and not to benefit the Church.

The Church distilled this argument from the holding of the Florida Supreme Court in *McNulty v. Hurley* (1957), Fla., 97 So.2d 185. In *McNulty*, the court affirmed summary judgment against the plaintiff, who alleged she had sustained injuries when she was pushed down the stairs of a church. She claimed the church was negligent in

not providing adequate supervision of the crowds leaving mass. The court found the plaintiff to be licensee because the plaintiff could not "contend that she went to mass for the benefit of Jesus Christ or the defendant (Bishop Hurley), who as corporation sole holds title to the church which she attended." *Id.* at 187.

*McNulty* is clearly distinguishable on its facts. While it may be clear that one who attends a worship service provides no benefit to his church, it is not clear that one who provides physical labor for a church does so for his own benefit. To say a church does not benefit from the volunteer labor of its members is to deny reality.

The *McNulty* court did suggest in *dicta*, however, that one who bestows an economic benefit on a church is not an invitee if his purpose in doing so was to serve God. The court stated "as it is that we who serve our God gain in so doing, so it is that we who give material things to assist in the work of our chosen religious belief receive by so doing. We are the recipients, not the benefactors." *Id.*

We cannot agree with the Florida court. That court would focus the inquiry on the individual's ultimate motivation for entering onto the property. Indiana precedent clearly demonstrates that we are not to inquire into these motivations. In Indiana, we look to the purposes of both parties, not just to the party who enters onto the property. *Mullins v. Easton* (1978), 176 Ind. App. 590, 376 N.E.2d 1178. If the landowner encourages the other party to enter onto the land for the landowner's economic benefit, invitation is inferred. *J.C. Penney Co. v. Wesolek* (1984), Ind.App., 461 N.E.2d 1149; modified 465 N.E.2d 763. *Mullins, supra.* If the other party enters onto the land and does act to the economic benefit of the landowner, we will not inquire whether he also hoped to obtain some benefit for himself. As long as his purpose is to act in some manner which in fact benefits the landowner, he is an invitee.

While Joseph may well have entered onto the property solely with his own benefit in

mind, that does not make him a licensee. Joseph claims the Church asked him onto the property so that it could save money in repairing the roof. If that was the Church's reason for asking Joseph onto the property, then the Church sought an economic benefit and Joseph is an invitee regardless of whether he also benefitted from his presence on the property in some manner.

### Conclusion

Summary judgment was clearly improper here. The trial court granted judgment despite the existence of genuine factual disputes. It also ignored precedent in failing to allow a suit by a member of an unincorporated association against the association. The summary judgment in favor of Calvary Baptist Church must be reversed and the case set for trial on the merits.

Reversed.

CONOVER, P.J., and YOUNG, J., concur.