Babette **FLEISCHER** and Jerome Fleischer, Appellants-Plaintiffs,

v.

**HEBREW ORTHODOX CONGREGA-TION, Appellee-Defendant.**

No. 71A03–8606–CV–156.

Court of Appeals of Indiana, Third District.

Feb. 25, 1987.

Rehearing Denied March 25, 1987.

Thomas H. Singer, South Bend, for appellants-plaintiffs.

Robert J. Konopa, South Bend, for appellee-defendant.

STATON, Judge.

Babette and Jerome Fleischer appeal the trial court's grant of summary judgment against them and in favor of the Hebrew Orthodox Congregation (Congregation). The Fleischers' appeal presents this court with one issue, a question of first impression in Indiana:

> Whether an individual attending religious services is an invitee, who can recover for injuries caused by the negligent maintenance of the premises.[1]

We reverse.

Babette Fleischer was injured while attending a service celebrating the Feast of Purim in 1983. The Fleischers, who were members of the Congregation, arrived at the synagogue before the service began, and were standing on a plastic runner that ran from the front entrance down the synagogue to the cloak room. Lillian Moss, also a member of the Congregation, entered the synagogue and walked toward the Fleischers to show them a scroll she was carrying. Mrs. Moss tripped on a gather in the runner, and fell against Babette Fleischer, fracturing Mrs. Fleischer's right leg.

The Fleischers sued the Congregation, alleging negligent maintenance of the plastic runner. At the hearing on the Congregation's motion for summary judgment, the Fleischers presented evidence that the runner had a tendency to bunch or gather because the teeth on the bottom of the runner did not hold firmly to the carpet beneath. There was evidence that two other women had tripped on the runner before the night Mrs. Fleischer was injured and that Lillian Moss had tripped several times. Lillian Moss's deposition indicated that she had offered to buy the Congregation a new, heavier runner that would fit more firmly on the floor.

The trial court granted the Congregation's motion for summary judgment on the ground that Babette Fleischer was a mere licensee on the Congregation's premises, and that its only duty toward her was to refrain from willfully or wantonly injuring her. The Fleischers appeal, arguing that the trial court erred as a matter of law in finding that Mrs. Fleischer was a licensee in the synagogue, and that there are genuine issues of material fact concerning whether the Congregation negligently maintained the runner.

Under Indiana law, the duty of care owed by an owner or occupier of land to one coming onto the premises depends largely upon the relationship between them. *Fort Wayne Nat'l Bank v. Doctor* (1971), 149 Ind.App. 365, 272 N.E.2d 876,

---

1. Recently the Fourth District considered a situation in which a church member was injured while voluntarily helping repair the church roof. *Joseph v. Calvary Baptist Church* (1986), Ind.App., 500 N.E.2d 250. The court was not faced with the issue before us, although in dicta it noted that "it may be clear that one who attends a worship service provides no benefit to his church, ..." *Id.* at 254. The court did not have reason to consider the public invitee rule discussed herein.

880. One who enters the premises for his own convenience, curiosity, or entertainment is a licensee, and cannot recover for injuries caused by the negligent maintenance of the premises. *Id.*

■ On the other hand, invitees or business visitors may recover for such injuries resulting from negligence. The Fleischers argue that this court has adopted the definition of invitee status set out in the *Restatement (Second) of Torts* Section 332 (1965):

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land.

The Fleischers further argue that Mrs. Fleischer was a public invitee under part (2) of the definitions above. While it is true that this court has approved the business visitor test set out at part (3), *Mullins v. Easton* (1978), 176 Ind.App. 590, 376 N.E.2d 1178, 1181; *J.C. Penney Co., Inc. v. Wesolek* (1984), Ind.App., 461 N.E.2d 1149, 1153, (modified on other grounds) 465 N.E.2d 763, we have never been asked to consider the public invitee test.

Our cases have required that the purpose of an invitee's visit have some relation to the owner's pecuniary interest or advantage. *Mullins, supra; J.C. Penney, supra.* In both *Mullins* and *J.C. Penney,* this court has recognized that one important aspect of the business visitor or invitee rule is that when one encourages others to enter premises to further his own purpose, an implication arises that he has exercised reasonable care to make the premises safe for those who enter for that purpose. The question before us in this case is whether such implications are sufficient justification for imposing a duty of reasonable care when no direct pecuniary interest is involved.

According to Dean Prosser, the early invitee cases did not require that an economic interest or benefit be involved, or they mentioned it only incidentally. Prosser, *Business Visitors and Invitees,* 26 Minn.L. Rev. 573 (1942). Two early Indiana cases are of interest in this regard. In *Howe v. Ohmart* (1893), 71 Ind.App. 32, 33 N.E. 466, plaintiff was injured while visiting a meeting of a literary society on a college campus. The college had printed circulars listing the literary society as one of the desirable features of the school, and otherwise promoted attendance at the meetings. Plaintiff had been personally encouraged to attend the meeting and to return to the school as a student. The court wrote that "[h]e who uses a building for certain business purposes must keep it in a reasonably safe condition for all who visit the building for the purpose of transacting the ordinary business there."

While the court in *Howe* referred to "business purposes," it did not discuss pecuniary interest or benefit as a requirement. In fact, the court cited with approval *Davis v. Central Congregational Soc'y* (1880), 129 Mass. 367, 37 Am.Rep. 368, in which the Supreme Judicial Court of Massachusetts wrote, concerning invitee status, that "[i]t makes no difference that no pecuniary profit or other benefit was received or expected by the society." *Davis* involved a church which sent out a general invitation for members of certain other churches to attend a conference on its premises.

In *New York, Chi. & St. L. R.R. Co. v. Mushrush* (1894), 11 Ind.App. 192, 37 N.E. 954, the court held that a railroad owed a duty of reasonable care to keep its station platform safe for a boy who came to the station to meet his sister's train. The court simply ruled that the railroad's duty to its passengers extended to those who came to meet passengers or see them off. The court offered no discussion of the boy's status or why the railroad's duty extended to him or others like him.

Even if these two cases were based in some part upon a pecuniary interest or

benefit requirement, by their facts they certainly strained and reduced the importance of any such requirement. Later cases would specifically require that an invitee enter the premises to transact business with the owner or occupant, or to do something to his benefit or to their mutual benefit. *See, e.g., Standard Oil Co. of Indiana, Inc. v. Scoville* (1961), 132 Ind. App. 521, 175 N.E.2d 711; *Hollowell v. Greenfield* (1966), 142 Ind.App. 344, 216 N.E.2d 537. Nevertheless, this court has continued to extend these requirements. For example, in *Hickey v. Shoemaker* (1960), 132 Ind.App. 136, 167 N.E.2d 487, the court held that plaintiff, who entered a funeral home to view the body of a friend, was an invitee. The court wrote:

> The nature of a funeral home is such that it is evident people do come to view the bodies of their deceased relatives and friends, and those so entering do so in accordance and design with the nature of such establishment. This is one of its intended uses, and the owner acquiesces in such use.

More recent cases have broadened the business invitee test itself to require merely that the visitor's purpose be *related to* the owner or occupant's pecuniary interest or advantage. *Mullins, supra; J.C. Penney, supra.* This court's further willingness, in *Mullins* and *J.C. Penney,* to look at the invitation itself, and the implication of reasonable care that arises from it, indicates a drifting away from pecuniary benefit or interest as the sole test. All of this makes clear that it is time to look for more appropriate tests for determining invitee status and imposing upon an occupant the duty of exercising reasonable care to keep his premises safe.

■ The public invitee test set out in *Restatement* section 332 (2) would require that the occupant open his premises to the public or to some broad segment of it.

Thus, it would not extend invitee status to social guests.[2] When premises are opened to the public, their use and condition begin to affect the public interest, so that it is reasonable for courts to impose upon the occupant a standard of reasonable care toward those members of the public who enter for the purpose for which they were invited. Prosser, *Business Visitors, supra,* at 587. The occupant does not lose control of his property; he can withdraw the invitation or restrict entry as he sees fit. *Id.* Neither does he owe a duty of reasonable care to the public in general. The test would further require that the visitor enter the premises for the particular purpose for which the occupant has encouraged the public to do so. It is this latter fact which raises the inference that the occupant will use reasonable care to keep the premises safe for the visitor.

The public invitee test has been adopted by the American Law Institute in its *Restatement (Second) of Torts* (1965). It has had the approval of legal scholars for some time. *See, e.g.,* Prosser, *Business Visitors, supra;* 2 Harper & James, *The Law of Torts* 1478, section 27.12 (1956). Other jurisdictions, as well, have begun to adopt and apply the test. *See, e.g., Handleman v. Cox* (1963), 39 N.J. 95, 187 A.2d 708; *O'Keefe v. South End Rowing Club* (1966), 64 Cal.2d 729, 414 P.2d 830, 51 Cal.Rptr. 534; *Stevens v. Bow Mills Methodist Church* (1971), 111 N.H. 340, 283 A.2d 488; *Post v. Lunney* (1972), Fla., 261 So.2d 146; *Wiley v. National Garages, Inc.* (1984), 22 Ohio App.3d 57, 488 N.E.2d 915.

Given the public interest involved and our recognition of the implication of safety which arises when the public is encouraged to enter premises for a particular purpose, we conclude that the public invitee test is a proper guide for determining invitee status. The fact that an owner or occupier has a pecuniary interest in the use of his premises is not the only appropriate justifi-

---

2. The dissent suggests that landlords could more easily be found liable to their tenant's social guests, citing *Hiller v. Harsh* (1981), 100 Ill. App.3d 332, 55 Ill.Dec. 635, 426 N.E.2d 960. *Hiller,* however, was not based on the public invitee rule at all, but rather on Illinois' rule that a landlord has a duty to use reasonable care in the maintenance of common areas, such as stairwells, over which he retains control, and that such duty extends to all persons lawfully on the premises, regardless of status. *Id.,* 55 Ill. Dec. at 639, 426 N.E.2d at 964. Illinois, in fact, retains the business invitee rule as the sole test of invitee status. *Id.*

cation for imposing upon him a duty of reasonable care, particularly when the business invitee test has been so broadened as to require only that the visitor's purpose for entering be related in *some* way, however tangentially, to that pecuniary interest. Some overlapping of this test with the pecuniary interest test will exist in some factual settings. For example, the plaintiff in *Hickey v. Shoemaker, supra,* who entered a funeral home to view the body of a friend, would meet either test. The adoption of both tests will ensure that a duty of reasonable care is imposed whenever it is appropriate.

 Applying the public invitee test, we conclude that Babette Fleischer was an invitee on the premises of the Congregation at the time she was injured. In his deposition, Rabbi Yisrael Gettinger of the Congregation stated that he encouraged all Jews to attend services at the synagogue. The Fleischers were at the synagogue for the purpose of attending a Purim service. Mrs. Fleischer was a public invitee when she was injured, and the Congregation owed her a duty to use reasonable care to keep the synagogue safe for her. Because there is a genuine issue of material fact concerning whether the Congregation was negligent in its maintenance of the plastic runner, we reverse.

GARRARD, P.J., concurs.

HOFFMAN, J., dissents with opinion.

HOFFMAN, Judge, dissenting.

I do not believe that the traditional basis for occupier liability can or should be so easily dismissed. For virtually all of the 20th Century the rule has been that the more demanding duty to use reasonable care only adhered when an occupier invited others onto his property in furtherance of his pecuniary interest. *See, e.g., Cleveland, etc., R. Co. v. Means* (1914), 59 Ind. App. 383, 104 N.E. 785. This rule provided a logical, common sense basis for premises liability by relating the need for the occupier to incur additional expense and effort to the occupier's business interest.

Now, however, the majority discards this long-standing rule. The only rationalization that the majority provides is that the supposed broadening of the traditional business invitee test justifies dispensing with the rule altogether. Based upon reported cases from other states that have adopted the majority's new rule, not only will business proprietors be held to the higher standard of care, but also, for example, operators of free public amusements, *Recreation Centre Corporation v. Zimmerman* (1937), 172 Md. 309, 191 A. 233, and organizers of college reunions, *Guilford v. Yale University* (1942), 128 Conn. 449, 23 A.2d 917. Landlords can more easily be found liable to their tenants' social guests. *Hiller v. Harsh* (1981), 100 Ill. App.3d 332, 55 Ill.Dec. 635, 426 N.E.2d 960. Potential liability is also broadened for an array of governmental and non-profit activities.

*See, e.g., Le Roux v. State* (1954) 307 N.Y. 397, 121 N.E.2d 386 (public hunting ground); *Baker v. Lane County* (1977) 28 Or.App. 53, 558 P.2d 1247 (county fair); *Ford v. Hotel and Restaurant Emp., etc., Local 159* (1967) 155 Conn. 24, 229 A.2d 346 (charity dance); and *McKinnon v. Washington Federal Savings & L. Ass'n* (1966) 68 Wash.2d 644, 414 P.2d 773 (permitting girl scout meeting to be held on premises).

There is no compelling justification shown for rejecting a rule that has served well and for taking Indiana down the path of ever broadening premises liability. Accordingly I respectfully dissent.