Linda D. **HUTCHINS** and David Hutchins, her husband, Plaintiffs–Appellants,

v.

**NORFOLK & WESTERN RAILWAY COMPANY, a corporation,** Defendant–Appellee.

No. 89–1492.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 8, 1989.

Decided Dec. 8, 1989.

Rehearing and Rehearing En Banc Denied Jan. 17, 1990.

Robert E. Harrington, Sr., Robert B. Thompson, Laurence C. Acker (argued), Henslee, Monek & Henslee, Chicago, Ill., George G. Ponton, Frankfort, Ind., for plaintiffs-appellants.

John C. Duffey (argued), Stuart & Branigin, Lafayette, Ind., Douglas B. King, Wooden, McLaughlin & Sterner, Indianapolis, Ind., Russell H. Hart, Stuart & Branigin, Lafayette, Ind., for defendant-appellee.

Before CUMMINGS and POSNER, Circuit Judges, and GORDON, Senior District Judge.[*]

CUMMINGS, Circuit Judge.

In this diversity action, Linda Hutchins and her husband David Hutchins sued the Norfolk & Western Railway Company for $900,000 apiece. Count I was for the wife to recover for injuries stemming from her fall from the ladder of a steam locomotive engine owned by the defendant. Count II was for the husband's loss of the wife's society, consortium and services and for his expenditures for her support and medical treatment. The gravamen of the complaint was that defendant was negligent in activating the blow-off cock valve [1] on the locomotive, thus emitting steam as Mrs. Hutchins was descending the clouded ladder of the locomotive. She claimed to be an invitee of the railway when the injury occurred.

The defendant admitted that its employees permitted Mrs. Hutchins to go aboard the steam locomotive and that she fell from the ladder while leaving. However, the railway denied that its employees were authorized to permit persons to climb aboard the locomotive. The accident occurred in Frankfort, Indiana, and the case is therefore controlled by Indiana law. At this stage the plaintiffs' success depends on whether Mrs. Hutchins was an invitee at the time of the accident or whether she was a mere licensee.

According to the undisputed facts, early on June 29, 1986, the Hutchinses went to see an excursion train which was on display in their home town of Frankfort, Indiana, en route to Decatur, Illinois. The five-day trip originated in Roanoke, Virginia, and entailed numerous stops (R. 147–148). The railway owned and operated the old-fashioned steam engine which was attached to this train whose journey was sponsored by the Roanoke, Virginia, Chapter of the National Railway Historical Society. The railway was receiving compensation from that society pursuant to contract.

After reading about the exhibition of this train in a Frankfort newspaper, the Hutchinses decided to view it. When they arrived at the exhibition site, the locomotive was being backed up in front of the plaintiffs. Mrs. Hutchins was interested in seeing the inside of the locomotive after it had stopped for display purposes and therefore she asked railway employees if she could board it. She was given permission to do so and used the ladder attached to the locomotive before being given a tour of the cab. In exiting via the ladder, Mrs. Hutchins misjudged the last step, fell backwards and hit her head on an adjoining railroad track. The complaint alleges that Mrs. Hutchins sustained serious injuries that aggravated preexisting latent physical infirmities, causing her to lose wages and disabling her from further employment. Accord-

---

[*] The Honorable Myron L. Gordon, Senior District Judge for the Eastern District of Wisconsin, is sitting by designation.

[1] In her deposition, Mrs. Hutchins no longer blamed the valve for her fall but instead blamed "a pulling force" apparently caused by the design of the locomotive. We do not decide whether or not the railway was negligent. That issue is left for trial.

ing to the depositions of plaintiffs, the fall brought on multiple sclerosis and even curtailed Mrs. Hutchins' ability to perform usual household chores.

Carl L. Smith, defendant's Division Road Foreman of Engines, was present at the time of the accident. In his deposition he testified that when a locomotive of an excursion train is stationary, as a general rule spectators are allowed to board it, and he acknowledged that train crews will customarily allow spectators on board such an engine. Deposition of Carl L. Smith at 29–30.

Mr. Smith also testified in his deposition that he gave permission to Mrs. Hutchins to board the excursion steam engine and assisted her in doing so. *Id.* at 24–25. He added that for public relations reasons, members of the public are allowed to board a stationary excursion locomotive. *Id.* at 29. He stated that he also assisted Mrs. Hutchins down the ladder and that she stumbled when stepping to the ground. *Id.* at 8–9.

In an April 1988 report Dr. Harold Wakeley stated that this ladder was not safe for general public use because it had uneven and irregular steps and shapes. He said that there was a high probability that members of the public would not learn in the first attempt how to mount and dismount such a ladder and that the danger caused by the ladder would not be apparent. Plaintiffs' App. 46–50.

Finally, one of the exhibits of the railway shows members of the public boarding this locomotive shortly after plaintiff's fall. Exh. E reproduced in plaintiffs' App. 14.

After reviewing the facts, Judge Dillin handed down an entry opinion holding that the railway was entitled to summary judgment. In concluding that Mrs. Hutchins was a licensee rather than an invitee, the court stated that she had not been invited into the locomotive and that the railroad did not allow people to tour the locomotive for public relations purposes. Upon its view of the facts, the district court decided as a matter of law that Mrs. Hutchins "was acting as a licensee at the time of the accident," citing *Millspaugh v. Northern Indiana Public Service Co.*, 12 N.E.2d 396 (Ind.App.1938), and *Hundt v. La–Crosse Grain Co., Inc.*, 425 N.E.2d 687 (Ind.App. 1981). Because of the court's conclusion that Mrs. Hutchins was a mere licensee, it followed that defendant's negligence would not permit recovery. Therefore the railway was granted summary judgment. We reverse on the ground that proper application of Indiana law should have led the district court to find that Mrs. Hutchins was an invitee, and we remand because we conclude there is a genuine issue of material fact concerning whether the railway was negligent.

In Indiana the rule still is that an injured party in Mrs. Hutchins' situation cannot recover for a defendant's negligence if she is a licensee rather than an invitee.[2] However, Indiana has broadened the definition of who is an invitee and has adopted the following definition from Section 332 of the Restatement (Second) of Torts:

(1) An invitee is either a public invitee or a business visitor.

(2) A public invitee is a person who is invited to enter or remain on land as a member of the public for a purpose for which the land is held open to the public.

(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly connected with business dealings with the possessor of the land.

*City of Bloomington v. Kuruzovich*, 517 N.E.2d 408, 412–413 (Ind.App.1987) (weekend softball player a public invitee at a city park); *Fleischer v. Hebrew Orthodox Congregation*, 504 N.E.2d 320, 322–324 (Ind. App.1987) (attendee at religious service a

---

**2.** Some courts have abandoned this approach to tort liability in favor of imposing a duty of reasonable care regardless of the common law distinctions between an invitee and a licensee. See, *e.g., Smith v. Arbaugh's Restaurant, Inc.,*

469 F.2d 97 (D.C.Cir.1972), certiorari denied, 412 U.S. 939, 93 S.Ct. 2774, 37 L.Ed.2d 399; *Pickard v. City and County of Honolulu,* 452 P.2d 445 (Hawaii 1969).

public invitee of synagogue), transfer denied, 539 N.E.2d 1 (Ind.1989) (Pivarnik, J., dissenting). In the absence of a controlling Indiana Supreme Court precedent or good prospect that the Indiana Supreme Court would disagree with the decisions of the Indiana appellate courts, we follow the decisions of the Indiana appellate courts. *First Comics, Inc. v. World Color Press, Inc.*, 884 F.2d 1033, 1038 (7th Cir.1989) and cases cited. Since these Indiana appellate decisions post-date the cases on which defendant relies, they require us to hold that on this record Mrs. Hutchins was an invitee.[3]

Mrs. Hutchins was a "public invitee" within the meaning of the Restatement (Second) of Torts Section 332(2) because the railway routinely permitted members of the public to board a stationary steam locomotive on request where it was part of a steam excursion train being exhibited to the public.[4] Although we need not determine that Mrs. Hutchins was both a public invitee and a business visitor, she might also qualify as a "business visitor" within the meaning of the Restatement (Second) of Torts Section 332(3) because at her request she was invited to tour the locomotive cab as part of the public relations phase of the railway's compensated excursion. As shown by deposition testimony and by the scene depicted in defendant's Exhibit E, it was common for members of the public to board the locomotive in connection with this display before the train started its journey to Decatur, Illinois.

In concluding that Mrs. Hutchins was an invitee, this Court is of course not deciding that the railroad is liable. However, she has presented enough facts in her favor to prevent a trial judge from entering summary judgment against her.

### Conclusion

Here it was shown that the railway's course of conduct was to allow visitors to tour its stationary excursion steam locomotives to foster good public relations and that its compensation contract permitted exhibiting such locomotives during excursion stops. In these circumstances we conclude that under Indiana law Mrs. Hutchins was an invitee. Having thus determined that Mrs. Hutchins was an invitee who was owed a duty of reasonable care, we remand to the district court for a jury to decide the question of whether the railroad was negligent.

Judgment reversed and cause remanded.

MYRON L. GORDON, Senior District Judge, dissenting.

This case represents a textbook example of a suit ripe for summary judgment. I would affirm the judgment below because, in my opinion, the district court correctly analyzed the undisputed facts and errorlessly applied Indiana's law to those facts.

The majority recognizes that there are no disputes of fact. The determinative legal issue in this case is whether under Indiana law, Ms. Hutchins was an invitee or a licensee. The trial judge ruled that "the railroad did not invite Ms. Hutchins to visit the locomotive for some mutually beneficial business purpose; rather, it allowed her to board at her own insistence so that she could satisfy her curiosity." Judge Dillin's Entry at p. 6, dated December 29, 1988. I believe that the record amply supports *that* conclusion and none other.

The district court granted the defendant's motion for summary judgment because it concluded that Ms. Hutchins was a licensee. The majority holds, as a matter of law, that Ms. Hutchins was an invitee, even though the plaintiffs did not move for summary judgment. I believe that Ms. Hutchins does not qualify as an invitee under Indiana's broad definition of an invitee; that definition is found in Section 332

---

3. Under Indiana law the question of whether one is an invitee or a licensee is a matter of law. *Wingett v. Teledyne Industries, Inc.*, 479 N.E.2d 51 (Ind.1985); *Hurst v. Board of Commissioners of Pulaski County*, 476 N.E.2d 832 (Ind.1985); *Miller v. Griesel*, 308 N.E.2d 701 (Ind.1974).

4. The public invitee test has been endorsed by legal scholars for some time. See, *e.g.*, Prosser, *Business Visitors and Invitees*, 26 Minn.L.Rev. 573 (1942); Harper, James, and Gray, *The Law of Torts* § 27.12 (2d ed. 1986).

of the Restatement (Second) of Torts. *Fleischer v. Hebrew Orthodox Congregation,* 504 N.E.2d 320, 322–323 (Ind.App. 1987); *City of Bloomington v. Kuruzovich,* 517 N.E.2d 408, 412–413 (Ind.App. 1987). In *Fleischer,* the court of appeals of Indiana, interpreting the Restatement's public invitee test, held that the test requires two showings:

> The public invitee test set out in *Restatement* section 332(2) would require that the occupant *open his premises to the public* or to some broad segment of it.... The test would further require that the visitor enter the premises *for the particular purpose* for which the occupant has encouraged the public to do so.

*Fleischer,* 504 N.E.2d at 323 (emphasis added); *see also City of Bloomington,* 517 N.E.2d at 413.

In my estimation, there is a critical distinction between opening one's premises to the areas designed for the use of the public and granting special permission to enter hazardous areas which are not so designed. Viewing the facts and all reasonable inferences therefrom in the light most favorable to the plaintiffs, I am unable to find any factual support in the record that suggests that the defendant extended an open invitation to the public to climb up the precarious stairs leading to the cab of the locomotive. The fact that the defendant's employees had the discretionary authority to grant requests from spectators enabling them to climb up into the cab of the locomotive does not satisfy the first element of Indiana's public invitee test.

The record is silent as to what exactly the railroad did to "open [its] premises to the public or to some broad aspect of it." Entry onto a steam locomotive by any member of the public was, as the majority acknowledges, only by "permission." Tellingly, Ms. Hutchins also recognized that she needed "permission" to board the cab of the locomotive. The record establishes that the plaintiffs' only expectation was "to view the train." Deposition of David Hutchins, p. 27; *see also* deposition of Linda Hutchins, p. 34.

While Carl Smith, a foreman employed by the defendant, states that "as a general rule" spectators are allowed to board the locomotive, it is clear that this allowance is in response to specific requests on the part of the spectators and not an open invitation to them. This is explained more fully by Thomas Lynch, a master mechanic employed by the defendant who assists the defendant in crowd control and public relations. Mr. Lynch averred in his deposition at p. 34:

> Well, we have an operating rule that basically says that outsiders are not permitted to ride on them, on a locomotive. But this, this is kind of unusual, this is different in the sense that it's not everyday a youngster gets to see a steam engine, or an older adult as far as that's concerned. *And they become curious and beg and plead to get up there, and finally if the time is right you say yeah, come on, you want to see what it looks like. So, I think it's just out of the graciousness of the train crew's heart that they try to allow these people to satisfy their curiousities* [sic]. (emphasis added.)

Whatever David Hutchins may have read in the Frankfort Times is not part of this record. In my opinion, it is inappropriate to infer that the railroad had extended an open invitation to spectators to climb up into the cab of the locomotive. The railroad opened up the public's opportunity to stand alongside and view the train; we know that that was the only expectation of the plaintiffs.

Nothing in the record warrants a finding that the public had an open invitation to board the train's locomotive cab. From the contract between the defendant and the Roanoke Historical Society, we find that the train's primary purpose in arriving at Frankfort, Indiana, was to allow for the embarking and disembarking of paying passengers. We also learn that admission into the passenger cars was prohibited unless one had purchased a ticket. Par. 5(f) of the Contract. The physical nature of the ladder leading to the cab of the locomotive does not suggest a broader invitation:

the pictures in the record demonstrate that the ladder leading to the cab is perpendicular to the ground and not angled for easy access to the next level.

The second requirement of the public invitee test has not been met in the case at bar. In my estimation, the railroad owed a duty of care to Ms. Hutchins while she was there "for the particular purpose" of viewing the excursion train. The record is abundantly clear that the railroad did not invite her to climb up the cumbersome steps leading to the locomotive cab. Rather, when Ms. Hutchins, out of her own sense of curiosity, sought and received permission to board the cab of the train, she became a licensee because she was no longer there *for the particular purpose* for which the railroad was open to the public.

Based on the record before this court, I endorse the district court's determination that Ms. Hutchins was a licensee.

> [O]ne who enters for his own convenience, curiosity, or entertainment is a licensee by permission, or a mere licensee, who (with certain exceptions) must take the premises as he finds them.

*Hundt v. LaCrosse Grain Co. Inc.*, 425 N.E.2d 687, 698 (1981), *citing Standard Oil of Indiana, Inc. v. Scoville*, 132 Ind. App. 521, 175 N.E.2d 711 (1976).

Accordingly, I respectfully dissent.